**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ORRIN MONROE CORWIN,**

        **Plaintiff,**

-vs-                                        **Case No.  6:02-cv-1377-Orl-19KRS**

**WALT DISNEY COMPANY, WALT DISNEY**
**WORLD COMPANY,**

        **Defendants.**
_____

## ORDER

    This case comes before the Court on the following:

1.      Plaintiff's Motion for Leave to File Objection to Bill of Costs (Doc. No. 290, filed May 19, 2005) and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File (Doc. No. 297, filed May 27, 2005).

    Having granted Defendant's motion for summary judgment in this copyright infringement case (Doc. No. 229, filed Nov. 12, 2004), this Court entered final judgment in favor of Defendant and against Plaintiff on November 22, 2004.  (Doc. No. 230).  On December 6, 2004, in compliance with Federal Rule of Civil Procedure 54 and Local Rule 4.18, Defendant timely filed a motion for attorneys' fees and costs (Doc. No. 231) and a Bill of Costs requesting the Clerk of Court to tax costs in the amount of $171,197.59 against Plaintiff (Doc. No. 236). The Clerk taxed such costs on December 7, 2004.  (Doc. No. 238).

    On January 7, 2005, Magistrate Judge Spaulding issued a Report and Recommendation with regard to Defendant's motion for fees and costs, in which she stated that Defendant's request for costs was "redundant and should be denied" in light of the Clerk's taxation of costs. (Doc. No. 262).  The Report and Recommendation advised that if Plaintiff "wishes to object to

the taxation of costs, he must do so by timely filing a motion to vacate the taxation of costs."
(*Id.*).  Judge Spaulding subsequently recused herself from this case and vacated her Report and
Recommendation.  (Doc. No. 265, filed Jan. 13, 2005).

      Upon assignment to the case, Magistrate Judge Baker entered his own Report and
Recommendation concerning the motion for attorneys' fees and costs, in which Judge Baker
recommended that Defendant's request for fees be denied without prejudice pending appeal to
the Eleventh Circuit and the request for costs be denied as moot because such costs had already
been taxed by the Clerk.  (Doc. No. 270, filed Jan. 18, 2005).  On May 9, 2005, this Court
adopted Judge Baker's Report and Recommendation, denied the motion for attorneys' fees
without prejudice, and ordered Plaintiff to pay $171,197.50 [sic] in costs within twenty [20] days
from the date of the Order.  (Doc. No. 289).  Plaintiff now requests leave of the Court to file
objections to the Clerk's taxation of costs out of time, pursuant to Federal Rule of Civil
Procedure 6(b).  (Doc. No. 290).

      Federal Rule of Civil Procedure 54(d)(1) provides that "...costs other than attorneys' fees
shall be allowed as of course to the prevailing party unless the Court otherwise directs....  Such
costs may be taxed by the clerk on one day's notice.  On motion served *within 5 days thereafter*,
the action of the clerk may be reviewed by the court." (emphasis added).  In this case, the Clerk
taxed costs against Plaintiff on December 7, 2004; according to the plain language of Rule 54,
any objections thereto should have been filed on or before December 14, 2004.

      Plaintiff states that he justifiably believed that the time to object did not begin to run until
the Magistrate Judge issued a Report and Recommendation or until the Court acted upon such
Report and Recommendation.  Thus he urges the Court to exercise its discretion to permit him to

file his untimely objections to the taxation of costs, arguing that his "failure to act was the result of excusable neglect," as allowed by Rule 6(b)(2).[1]

The Eleventh Circuit has held, "as a matter of law, that an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline." *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997) (quoting *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 391 (1993) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect....")). The *Riney* Court considered an appellant's failure to timely file post-trial motions pursuant to Rules 59 and 60 which had the effect of making his appeal to the Circuit Court untimely as well. *Id.* at 997. The attorney in that case believed that such post-trial motions had been timely filed because they were filed within ten days of his *receipt* of the notice of entry of judgment, rather than the *date that judgment was entered* as required by Rules 59 and 60. *Id.* The lawyer consequently believed that the time to file a notice of appeal on behalf of his client had been tolled, and the district court found that such mistaken belief constituted excusable neglect. *Id.* The Circuit Court stated that the mistake in that case was based on "an apparent failure to review or to appreciate the relevant rules, which clearly indicate that a party has ten days from the entry of judgment" to file motions which would toll the appeals period, and it held that the district court

---

[1] Rule 6(b) provides,

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified time period permit the act to be done where the failure to act was the result of excusable neglect....

had abused its discretion in finding excusable neglect. *Id.* at 999 (distinguishing *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996) (mistake of fact sufficient to demonstrate excusable neglect where there was miscommunication between lead counsel, associate counsel and secretary concerning approach of deadline)).

In the instant case, aside from asserting that "both Magistrate Judges considered the Motion for Fees and Costs as being directed at the Bill of Costs,"[2] Plaintiff offers no authority on which he relied in forming his mistaken belief other than his opinion that "the time to object *should not run* until either (1) the entry of the Magistrate Judge's Report and Recommendations, or (2) the adoption by this Court of said Report and Recommendations."[3]  (Doc. No. 290, p. 3 (emphasis added)).  Rule 54(d)(1) states that objections to the taxation of costs by the Clerk must be made "within five days thereafter...."  However, rather than comply with this clear requirement, Plaintiff waited for five months to file his objections.  Neither the mistaken understanding of the rule by Plaintiff or his counsel nor their opinion of what the rule should be can constitute excusable neglect where they have failed to read or comprehend the plain language of the applicable rules.  Accordingly, Plaintiff's Motion for Leave to File Objection to Bill of Costs is **DENIED**.

---

[2]  Although each Report and Recommendation addressed the motion for costs, both recommended that the motion be denied as "redundant" (Doc. No. 262) or "moot" (Doc. No. 270) in light of the Clerk's prior taxation of costs.

[3]  It is worth noting that Plaintiff's objections would be untimely under any of his suggested deadlines.

2.      Defendant's Motion to Require Plaintiff to Post Bond for Costs on Appeal (Doc. No. 298, filed May 27, 2005); Defendant's Memorandum in Support of Motion to Require Plaintiff to Post Bond (Doc No. 300, filed May 27, 2005); Plaintiff's Memorandum in Opposition to Defendant's Motion (Doc. No. 301, filed June 10, 2005).

Plaintiff has filed Notices of Appeal to the Eleventh Circuit Court of Appeals from this Court's Order excluding certain evidence and granting summary judgment in favor of Defendant (Doc. No. 255, filed Dec. 10, 2004; Doc. No. 229, filed Nov. 12, 2004), from its Order denying Plaintiff's motions for reconsideration and clarification (Doc. No. 294, filed May 20, 2005; Doc. No. 288, filed Apr. 28, 2005) and from its Order adopting the Report and Recommendation of the Magistrate Judge regarding costs (Doc. No. 294; Doc. No. 289).  Defendant now moves the Court to require Plaintiff to post bond for the anticipated costs of these appeals pursuant to *Federal Rule of Appellate Procedure* 7.  (Doc. No. 298).

Rule 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *Fed. R. App. P.* 7.  The employment of the word "may" makes clear that the decision whether to require an appellant to post bond is within the district court's discretion.[4] *Id.*; *seee also Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1328 (11th Cir. 2002) (imposition of Rule 7 costs bond reviewed for abuse of discretion); *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court").  Defendant's brief focuses soley on the protracted history of the instant litigation in which it prevailed and the potential for a costly appeal and argues that requiring Plaintiff to post

---

[4] Perhaps because of this discretion, case law provides little guidance concerning any factors which should be considered in determining whether a bond requirement is appropriate.

bond for appellate costs would "protect [Defendant] from additional exposure." (Doc. No. 300, p. 5).

Plaintiff in turn contends that "Defendant's sole purpose in requesting a bond of $150,000 is to prevent Plaintiff from appealing." (Doc. No. 301, p. 2). Plaintiff cites case law supporting the proposition that where an appellant cannot afford to post bond, requiring him to do so may be an unconstitutional deterrent of his right to appeal. *See Adsani*, 139 F.3d at 78. While this may well be the case, Plaintiff has failed to argue that he, in fact, cannot afford to post the bond requested by Defendant in this instance, nor has he represented that if required to post bond he will have no choice but to abandon his rightful appeal. Instead, Plaintiff informs the Court that his counsel has been working pursuant to a contingency fee arrangement and that he has not paid for any of the fees incurred during the course of the litigation. (Doc. No. 301, p. 3). Presumably, this statement is intended to invite the Court to make the broad inferential leap that because Plaintiff has not yet paid his attorney, it must follow that he is financially unable to post bond for costs on appeal. The Court declines to engage in such speculation. Plaintiff had the opportunity to demonstrate that a bond requirement would create a financial burden and prevent him from exercising his right of appeal and did not do so. "[W]ithout any showing of [] financial hardship, the bond imposed on [Plaintiff] is not an impermissible barrier to appeal...." *Adsani*, 139 F.3d at 79.

Citing *Adsani*, Plaintiff next argues that the Rule 7 bond provision is intended to protect an appellee where the appellant "has no assets in the United States and therefore poses a payment risk." (Doc. No. 301, p. 3). A lack of domestic assets was indeed a factor which contributed to the imposition of a bond requirement in *Adsani*. 139 F.3d at 75. However, it

would be a misinterpretation of the Second Circuit's opinion and the plain language of the Rule to state that the Rule applies *only* where an appellant has no assets in the country.  Rule 7 provides for a bond "to ensure payment of costs on appeal."  For almost three years, the parties have litigated complex, document-intensive and at times contentious issues in the instant lawsuit in which Defendant ultimately prevailed after spending approximately $1.7 million in fees and costs.  (Doc. No. 299, filed May 27, 2005, Etscorn Aff., ¶ 4).  The Court does not question Plaintiff's right to appeal its unfavorable rulings, nor does it weigh the merits or probable outcome of such appeals.  Nevertheless, the Court finds it reasonable to protect Defendant by requiring Plaintiff to provide some security for the costs of his endeavor in the form of a costs bond.

The Court now must determine the amount of the bond required to be posted.  Where the cause of action in the underlying litigation is subject to a statutory fee-shifting provision which includes attorney's fees in the definition of costs, the Eleventh Circuit has adopted the Second Circuit's approach and has determined that a Rule 7 costs bond may include attorney's fees in the calculation of costs on appeal.  *See Pedraza*, 313 F.3d at 1333 (relying on *Adsani*, 139 F.3d 67).  In *Adsani*, the Second Circuit considered the same fee-shifting provision of the Copyright Act at issue in the instant case, 17 U.S.C. § 505, and held in that copyright case attorney's fees were properly included in a costs bond.  139 F.3d at 75, 78 ("Congress has decided to constrain the rights of copyright litigants upon appeal by exposing them to the potential imposition of a Rule 7 bond for the 'costs of appeal' where attorney's fees are awarded 'as part of the costs.'").

Plaintiff contends that because the award of § 505 attorney's fees as part of costs is discretionary, the Court should not include the amount of such fees in the calculation of the costs

bond.  (Doc. No. 301, pp. 7–8).  While this Court previously has declined to decide the issue of

Defendant's entitlement to attorney's fees incurred at the trial level pending Plaintiff's appeals

(Doc. No. 289), the possibility remains that Defendant's fees on appeal may be awarded in

addition to its trial fees in the event that this Court's rulings are affirmed.  The Court finds

Defendant's request to include attorney's fees in the costs bond to be reasonable in order to

protect its interest as the incumbent prevailing party.

Finally, Plaintiff argues that Defendant has "pick[ed] a number out of the air" in arriving

at its estimate that it will incur $150,000 in fees and costs in responding to Plaintiff's appeals.

(Doc. No. 301, p. 5).  Plaintiff directs the Court's attention to two cases on this point; however,

the Court finds each distinguishable.  In the first case, the District of Columbia Circuit reversed a

district court's imposition of a $10,000 appeal bond and remanded for a reduction in the bond

amount because the district court had improperly considered attorney's fees where such fees

were not to be included in costs—a conclusion which is not applicable in the instant case, as

discussed *supra*—and because the district court relied on its "inherent or rule-based power" to

require a bond in arriving at the amount on its own in order to deter what it considered to be a

frivolous appeal.  *In re American President Lines, Inc.*, 779 F.2d 714, 716–17 (D.C. Cir. 1985).

In the second case, the appellee moving the district court to impose a bond requirement failed to

give that court "any inkling as to how the amount of any bond should be computed."  *Walsh v.

New London Hosp.*, 1994 WL 2877756, *1 (D.N.H. 1994).  In contrast, in the instant case

Defendant has given the Court a specific amount and a clear idea of the grounds for its request,

namely the anticipated amount of attorney's fees which will be incurred on appeal based on

almost three years of experience litigating the issues raised in Plaintiff's appeals and the costs of

reproduction of a voluminous record.  (Doc. No. 299, Etscorn Aff., ¶ 8).  Based on the Court's

own experience, $150,000 seems a reasonable approximation of the appellate costs and fees

involved in a lawsuit of this nature.  Moreover, Defendant asks for security in the amount of only

ten percent (10%) of the total anticipated fees and costs on appeal.

"The requirements of security for appeal to protect appellees are valid if 'reasonably

tailored to achieve these ends and uniformly and nondiscriminatorily applied.'" *Adsani*, 139 F.3d

at 78.  Based on the current record before the Court, a Rule 7 bond for costs on appeal would

appear to be appropriate in this case and attorney's fees properly should be included in the

calculation of Defendant's appellate costs.  A fair estimate of Defendant's total costs on appeal is

$150,000,  and a bond for ten percent (10%) of such amount would be reasonably tailored to

ensure the payment of such costs on appeal.

There are ample reasons for granting Defendant's Motion to Require Plaintiff to Post

Bond for Costs on Appeal (Doc. No. 298); however in an abundance of caution, the Court will

reserve ruling on the Motion to allow Plaintiff to more clearly assert his inability to post a cost

bond and its affect on his appeal.

Plaintiff shall file within **seven (7) days** from the date of this Order an affidavit stating

his financial condition, his ability to post a Rule 7 costs bond and the effect a requirement for

posting a cost bond in the amount specified above would have on his ability to pursue his

appeals currently pending before the Eleventh Circuit Court of Appeals.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this __11th__ day of August,

2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record