# United States Court of Appeals
## For the Eleventh Circuit

| | |
|---|---|
| Nos. 04-16554 & 05-12869 | **FILED**<br>U.S. COURT OF APPEALS<br>ELEVENTH CIRCUIT |
| District Court Docket No.<br>02-01377-CV-ORL-19KRS | Jan 22, 2007<br>THOMAS K. KAHN<br>CLERK |

ORRIN MONROE CORWIN,
as sole heir and personal
representative of the
Estate of Mark E. Waters, II,

        Plaintiff-Appellant,

versus

WALT DISNEY COMPANY,
a Delaware corporation,
WALT DISNEY WORLD COMPANY,
a Florida corporation,

        Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---------------------------------------------------------------
Appeals from the United States District Court
for the Middle District of Florida
---------------------------------------------------------------

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
JUN 1 5 2007
U.S. COURT OF APPEALS
ATLANTA, GA.

| | |
|---|---|
| Entered: | January 22, 2007 |
| For the Court: | Thomas K. Kahn, Clerk |
| By: | Jackson, Jarvis |

Orrin Monroe CORWIN, as sole heir and personal representative of the Estate of Mark E. Waters II, Plaintiff–Appellant,

v.

WALT DISNEY COMPANY, a Delaware corporation, Walt Disney World Company, a Florida corporation, Defendants–Appellees.

Nos. 04–16554, 05–12869.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 2007.

**Background:** Heir to artist's estate brought copyright infringement action against theme park developer, alleging that theme park infringed artist's painting, which constituted rendering of third party's idea for an international theme park in miniature. The United States District Court for the Middle District of Florida, No. 02-01377-CV-ORL-19KRS, Patricia C. Fawsett, J., granted summary judgment for developer, denied heir's motion for clarification and reconsideration, and adopted magistrate judge's report and recommendation awarding taxable costs to developer, 2005 WL 1126659. Heir appealed.

**Holdings:** On reconsideration, the Court of Appeals, Birch, Circuit Judge, held that:

(1) testimony of artist's former wife and third party's widow and daughter was not based on personal knowledge and thus was properly excluded;

(2) expert reports, which did not focus on protectable elements of expression, were properly excluded;

(3) there was no evidence that theme park developer had access to artist's painting; and

(4) painting and theme park were not strikingly similar; and

(5) heir did not establish excusable neglect for untimely objection to award of costs.

Affirmed.

Opinion, 468 F.3d 1329, superseded.

**1. Federal Courts ⚖️822**

Court of Appeals reviews for abuse of discretion a district court's ruling on admissibility of evidence, leaving district court's ruling undisturbed unless Court finds that the district court has made a clear error of judgment, or has applied the wrong legal standard.

**2. Federal Civil Procedure ⚖️2545**

Evidence inadmissible at trial cannot be used to avoid summary judgment.

**3. Federal Civil Procedure ⚖️2539**

Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.

**4. Copyrights and Intellectual Property ⚖️89(2)**

Testimony of artist's former wife and testimony of third party's widow and daughter, that third party met with and presented his idea for an international theme park in miniature to officials at company that later developed an international theme park, offered in response to company's motion for summary judgment in copyright infringement action brought by heir of estate of artist, who had painted rendering of third

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2007 Thomson/West

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

ORIGINAL

CORRECTED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 22 2007

THOMAS K. KAHN
CLERK

party's theme park idea, was not based on personal knowledge and thus was properly excluded as to issue of access; artist's former wife asserted no direct personal knowledge of painting or transaction between artist and third party, and neither third party's widow nor his daughter claimed to have been at alleged meeting between third party and officials, nor did they claim personal knowledge of what materials third party took with him to any such alleged meeting.

**5. Federal Courts** ⟜823

Court of Appeals reviews a district court's exclusion of expert reports for abuse of discretion.

**6. Evidence** ⟜555.2

With respect to admission of expert reports, the court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand. Fed. Rules Evid.Rule 702, 28 U.S.C.A.

**7. Evidence** ⟜508, 535, 555.2

For expert testimony to be admissible, the proponent of the testimony must show that: (1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**8. Copyrights and Intellectual Property** ⟜89(2)

Expert reports offered by heir to artist's estate in response to defendant theme park developer's motion for summary judgment, in copyright infringement action brought by heir alleging infringement of artist's painted rendering of third party's theme park idea, focused on only concepts and ideas behind the painting and developer's theme park, rather than on protectable expression of those concepts and ideas, and thus were properly excluded by district court, even if experts were qualified to testify competently regarding matters they intended to address. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**9. Copyrights and Intellectual Property** ⟜4.5

Ideas, as opposed to expression of those ideas, are not protected by copyright law.

**10. Copyrights and Intellectual Property** ⟜89(2)

Because ideas are not protected by copyright law, if an expert relies on uncopyrightable ideas rather than on the expression of those ideas in analyzing alleged copyright infringement, the expert's report is excludable in considering summary judgment motion. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**11. Copyrights and Intellectual Property** ⟜12(2)

"Scenes a faire," which include incidents, characters, or settings that are indispensable or standard in the treatment of a given topic, are not copyrightable.

See publication Words and Phrases for other judicial constructions and definitions.

**12. Copyrights and Intellectual Property** ⟜89(2)

If an expert relies solely upon scenes a faire or other stock elements not protected by copyright, in analyzing alleged copyright infringement, the expert's report is excluda-

ble in considering summary judgment motion. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

### 13. Copyrights and Intellectual Property
⊂⊃12(3)

A work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way.

### 14. Copyrights and Intellectual Property
⊂⊃12(3)

Artist's painting that constituted rendering of third party's idea for an international theme park in miniature would not be appropriately analyzed as a "compilation," in copyright infringement action brought by heir to artist's estate against theme park developer, given statutory definition of compilation as a work formed by the collection and assembling of preexisting materials or of data that were selected, coordinated, or arranged in such a way that the resulting work as a whole constituted an original work of authorship. 17 U.S.C.A. § 101.

See publication Words and Phrases for other judicial constructions and definitions.

### 15. Copyrights and Intellectual Property
⊂⊃89(2)

Supplemental expert affidavits and report offered by heir to artist's estate in response to defendant theme park developer's motion for summary judgment, in copyright infringement action brought by heir alleging infringement of artist's painted rendering of third party's theme park idea, were untimely, as filed after deadline for expert reports, and thus properly excluded; although affidavits were filed before court's deadline for financial expert reports, they did not address financial issues, only supplemental report to address financial impact of theme park was filed after later deadline for financial reports, and, in any event, affidavits and report con-

tained nothing new as compared to earlier reports, so they, like earlier reports, were excludable under *Daubert*. Fed.Rules Civ. Proc.Rules 26(a)(2)(C), 37(c), 28 U.S.C.A.

### 16. Evidence ⊂⊃555.2

Although they are often helpful, *Daubert* hearings on proffered expert testimony are not prerequisite to a determination of admissibility under the Federal Rules of Evidence or established law. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

### 17. Copyrights and Intellectual Property
⊂⊃51

To establish copyright infringement, a plaintiff must prove (1) its ownership of the copyright and (2) copying by the defendant or person who composed the defendant's work.

### 18. Copyrights and Intellectual Property
⊂⊃83(3.1)

To demonstrate copying, for purpose of copyright infringement claim, a plaintiff must show that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works.

### 19. Copyrights and Intellectual Property
⊂⊃83(3.1)

Access to copyrighted material, as element of copyright infringement, requires proof of a reasonable opportunity to view the work in question.

### 20. Copyrights and Intellectual Property
⊂⊃83(7)

There was no evidence that theme park developer had access to artist's painting, which constituted rendering of third party's idea for international theme park in minia-

ture, as would support copyright infringement claim asserted against developer by heir to artist's estate.

### 21. Copyrights and Intellectual Property ⊕83(3.1)

Where a plaintiff claiming copyright infringement cannot demonstrate access to copyrighted material he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.

### 22. Copyrights and Intellectual Property ⊕83(3.1)

"Striking similarity" between a copyrighted work and an accused work exists, for purpose of infringement claim, where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.

> See publication Words and Phrases for other judicial constructions and definitions.

### 23. Copyrights and Intellectual Property ⊕83(7)

Copyrighted painting, consisting of rendering of third party's idea for international theme park in miniature, and developer's theme park, which included internationally themed exhibits, were not strikingly similar, as would support finding of copying in infringement action brought against developer by heir to artist's estate, given significant differences between the two manifestations, including appearance of globe, level of detail, location of pavilions, and presence of elements at park that were not present in artist's painting.

### 24. Copyrights and Intellectual Property ⊕89(2)

Expert's testimony as to absence of coherent development in theme park's design, offered in response to defendant theme park developer's evidence of independent creation on its motion for summary judgment in copyright infringement action brought by heir to estate of artist who painted rendering of third party's theme park idea, was speculative and conclusory, and thus insufficient to raise genuine issue of material fact as to issue of independent creation.

### 25. Federal Courts ⊕829

Court of Appeals reviews a district court's denial of a motion for reconsideration for abuse of discretion.

### 26. Federal Courts ⊕830

A district court's award of costs is reviewed for abuse of discretion.

### 27. Federal Civil Procedure ⊕2742.1

District court had discretion to refuse to address on the merits plaintiff's untimely objection to taxation of costs. Fed.Rules Civ.Proc.Rule 54(d)(1), 28 U.S.C.A.

### 28. United States Magistrates ⊕23, 25

Unsuccessful plaintiff's alleged belief that five-day deadline for objecting to taxation of costs was tolled by filings related to costs and fees, at least until magistrate judge made report and recommendation or perhaps until district court adopted such report and recommendation, did not establish "excusable neglect" for plaintiff's untimely filing of such objection; counsel's misunderstanding of the law could not constitute excusable neglect.

Fed.Rules Civ.Proc.Rules 6(b), 54(d)(1), 28 U.S.C.A.

See publication Words and Phrases for other judicial constructions and definitions.

### 29. Federal Courts ⊜830

Court of Appeals reviews for abuse of discretion a district court's determination regarding existence of excusable neglect for a party's untimely objection to taxation of costs. Fed.Rules Civ.Proc.Rules 6(b), 54(d), 28 U.S.C.A.

---

Appeals from the United States District Court for the Middle District of Florida.

Before EDMONDSON, Chief Judge, and BIRCH and ALARCON,* Circuit Judges.

BIRCH, Circuit Judge:

Upon *sua sponte* reconsideration of this appeal, we vacate our prior opinion, published at 468 F.3d 1329 (11th Cir.2006), and substitute the following opinion in its place.

Plaintiff-appellant, Orrin Monroe Corwin, appeals (1) a 12 November 2004 order disposing of several evidentiary issues and granting summary judgment in favor of defendant-appellee, Walt Disney World Company ("WorldCo" or "Disney" for its precursor); (2) a 28 April 2005 order denying Corwin's motion for clarification and reconsideration; and (3) a 9 May 2005 order adopting the report and recommendation of the magistrate judge awarding taxable costs to WorldCo.

---

* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Because we find that Corwin failed to raise a genuine issue of material fact as to either WorldCo's access to Mark Water's rendering of a theme park concept entitled "Miniature Worlds" or as to striking similarity between that rendering and EPCOT (Experimental Prototype City of Tomorrow), we AFFIRM as to summary judgment and the motion to reconsider. In addition, because Corwin's objection to the district court's costs order was untimely, and because Corwin failed to show excusable neglect for his untimeliness, the district court acted properly in refusing to address the merits of that objection. Accordingly, we AFFIRM the district court's costs order.

## I. BACKGROUND

This appeal arises out of a copyright infringement suit filed by Corwin against WorldCo.[1] Corwin is the former neighbor of Mark Waters II and the sole heir to his estate. Corwin asserts that Waters, while living in Hawaii in the 1960s, painted a rendering of a concept for an international theme park in miniature ("Miniature Worlds Painting" or "Painting"). Waters allegedly did so at the request of Robert Jaffray, who had conceived of the idea after viewing miniature villages elsewhere, particularly in Britain. Jaffray's concept entailed cities, villages, and landscapes representing nineteen nations from six continents. It included animals, buildings, landscaping, and human figures carved from wood. For each nation represented, the model would include representations of places of particular historical or geographical interest including recognizable structures such as the Roman Coliseum or London's Big Ben. Everything was to be in

---

1. Although the Walt Disney Company was also originally named in this suit, it was dismissed for lack of personal jurisdiction in April 2003.

miniature.   Shortly after the Painting was complete, the Jaffrays left Hawaii.   Jaffray did not keep in touch with Waters.

Corwin asserts that Jaffray attempted to take his theme park concept to Walt Disney in the 1960s, and that he took the Painting and a presentation of the concept to a meeting with a Disney representative in 1962 or 1963, but later received a rejection letter. WorldCo denies such a meeting occurred.

Corwin alleges that EPCOT, which was opened by WorldCo in 1982, was copied from Waters's illustration of Jaffray's concept. He particularly points to a similarity between the Painting and a 1981 Hall/Scifo rendering of EPCOT.   Waters allegedly painted the Miniature Worlds Painting as a freelance artist and retained his ownership of the copyright interest.   Corwin, who only recently found out about his inherited interest in the Painting and the claim, registered the copyright in 2002 and sued WorldCo for copyright infringement shortly thereafter.   Specifically, he alleges that WorldCo infringed upon his exclusive rights to reproduce the Painting, to prepare derivative works of the Painting, to distribute copies of the Painting, to display the Painting, and to attribution of the Painting pursuant to 17 U.S.C. §§ 106(1), (2), (3), and (5), 106A(a)(1)(A), and 113.

### A.  Access Evidence

In support of his assertions regarding Disney's access to the Painting, Corwin has produced the testimony of Waters's former wife, Jaffray's widow, and Jaffray's daughters. He has also produced two letters and two notes.

Waters's former wife, Ellen Pauline Waters, denied any knowledge of the Miniature Worlds Painting in particular prior to having seen a story about it in a Toledo, Ohio newspaper in 2000.   R15–171 at 14–16, 20.   She said that Waters had not discussed the Jaffrays in detail but that he had told her he was doing work for Jaffray.   *Id.* at 18, 25. She also reported that Waters had talked to her about the Miniature Worlds project which she understood was to be located outside Washington, D.C.   *Id.* at 15.

Marian Jaffray, Jaffray's widow, testified that she believed Jaffray had met with a representative of Walt Disney in 1962 or 1963.   R15–173 at 24.   She also testified that Jaffray ultimately received a rejection letter. *Id.* at 35–36.   Marian Jaffray was not at the alleged meeting and conceded that she did not know what Jaffray took with him to that meeting, but "just assumed" he took the "total picture of his plans."   *Id.* at 103–04. She was unable to produce the rejection letter.   *Id.* at 36.

Jaffray's daughter, Patricia Jaffray Jones, testified that she remembered picking her father up at a train station after an alleged meeting with Disney.   R12–165 at 35–36. She speculated that Disney did not return the materials Jaffray had used in his presentation at the alleged meeting until a couple of months thereafter.   *Id.* at 137–38.   However, she could not personally confirm the presence of the Painting among these materials, nor did she attend the alleged meeting herself.   *Id.* at 108, 112.   Jones also testified that when her father viewed a depiction of EPCOT sent to him by mail in 1980, she heard him say, "Oh, my god, they built it . . . .   I left everything with them . . . . They must have photographed and copied everything.   No wonder they kept it for a month."   R12–165 at 140.   Jones testified that in connection with this statement, Jaffray specifically mentioned blueprints, his site map, and "the drawings."   *Id.*

As for the documentary evidence, the first letter, dated 10 May 1963, is from Jaffray to

Joseph P. Reddy, Director of Public Relations at Disney. In the letter, which apparently renews an already rebuffed offer to bring his idea to Disney, Jaffray expresses his understanding that Walt Disney "has his hands completely full and cannot consider new projects at this time." R17–198, Exh. 4. A 27 May note from Reddy to William Cottrell, one of Disney's upper level executives, inquires "Is there anything we can do on this?" *Id.*, Exh. 5. It is unclear from the record, however, to what the note refers. Finally, a letter dated 6 June 1963 from Reddy to Jaffray states that Disney is "only designing the Exhibits" for the World's Fair and that "Ford and General Electric let the contracts for manufacturing the miniatures and the actual buildings." *Id.*, Exh. 6. Reddy informed Jaffray that the "new projects for Disneyland are already in work for the next few years" and concluded the letter by expressing regret that he could be of "no more help to [Jaffray]." *Id.* The final note comes from the period of time during which WorldCo was developing EPCOT. Martin Sklar, one of the leaders of the EPCOT design team, apparently during a meeting, drew an arrow on a piece of paper. The arrow runs from left to right and to the left of it is written "Miniature World" and "Micro Miniature World." *Id.*, Exh. 7. To the right of the arrow is written "Cat = 'Route to the Future.'" *Id.* At the top of the same page are another set of notes referring again to "the Cat" as well as to "'Our Town' Narrator" and "Rabbit." *Id.* Sklar testified that he does not remember what he was thinking about when he made these notes. *Id.*, Exh. 14 at 176.

## B. *Expert Witnesses*

As the litigation progressed, the district court set a final discovery cut-off in April 2004, with expert witness disclosures due

from Corwin in June 2004. Corwin timely disclosed the reports of four experts: Thomas Colbert, Robert Rydell, Peter Alexander, and Frank Constantino.

### 1. *Colbert*

The expert report of Thomas Colbert introduces itself as a comparison of "Basic Concepts, Program, and Design" between the "Waters proposal for Miniature Worlds and EPCOT as it was finally built." R6–152, Exh. 1 at 2. Colbert proceeds by listing similarities in programmatic design elements, site design elements, and building design elements. He asserts that "basic functional relationships between major elements of both projects are described by the exact same bubble diagram." *Id.* at 3. He concludes that "EPCOT as finally built bears a striking similarity to the graphic expression of Miniature Worlds as prepared by Mr. Waters." *Id.* at 5. He notes specifically that

> [a]t every level, from the basic concept and basic organization, to the way nationally themed pavilions are arranged around a vast lake while being visually and functionally separated by landscaped, wooded areas with plantings indigenous to the nations under consideration to the way the artistic renderings are composed with landscaped access to parking on the lower left hand side and festive lake on the upper righthand side these two projects are the same.

*Id.* Finally, although he concedes that "there are dissimilarities between the projects," he asserts that "the core *idea* is in fact the same." *Id.* (emphasis added). Colbert asserts that "the exact combination and arrangement of elements which Waters proposed was unique and had never before been proposed." *Id.* at 7. He similarly concludes that "Mark Waters['s] design for Miniature

Worlds was the source of the fundamental conception behind EPCOT in its final built form" and that the Waters Painting is "highly original." *Id.*

### 2. Rydell

The report of Robert Rydell also compares the Waters Painting and EPCOT, but in light of scholarly literature on the history of World's Fairs, theme parks, and amusement parks. The report lists common elements such as globes, ampitheatres, landforms, railroads and boats, national representations, a United States pavilion, horticulture, landscaping and overall plan, globalization, and lakes. R6–152, Exh. 2 at unnumbered 1–2. The report next observes that most of these elements were commonly seen at World's Fairs prior to the development of either the Painting or EPCOT. *Id.* at unnumbered 2–3. The report catalogs some similarities in placement of elements between the Painting and EPCOT but generally does not describe the placement of such elements in World's Fairs. The report also includes a long section on the development and history of World's Fairs and theme parks. Finally, it concludes that

> [t]he arrangement of individual elements at EPCOT was neither coincidental nor happenstance. While individual elements in the EPCOT design may have been inspired by World's [F]airs, the arrangement of these modules into a thematic whole appears to have been strongly influenced by Mark Waters' Miniature Worlds [P]ainting.

*Id.* at unnumbered 8. The report does not describe any specific expression or expressive effect of the arrangement of elements.

### 3. Alexander

The expert report of Peter Alexander, who was Director of Project Management Sup-

port at Walt Disney Productions during the EPCOT project, begins with an exposition on the organizational principles underlying various categories of theme parks. R6–152, Exh. 3 at unnumbered 2–3. The report then offers a lengthy discussion of the development of EPCOT based upon a book on the topic written by Steve Mannheim and also upon Alexander's own experience at Disney. *Id.* at unnumbered 3. The "Findings of the Study" section lists a series of common ideas contained in the Painting and EPCOT. On this basis, Alexander concludes that there is a "striking similarity between Mar[k] Waters['] painting of Col. Jaffray's Miniature World and Disney's EPCOT." *Id.* at unnumbered 7.

In his report, Alexander also asserts that there is no transition or development from one idea to the next in the EPCOT project and that the document production in the case has failed to uncover any intermediate steps that would explain the evolution of design or form. Accordingly, he concludes that EPCOT, as it has been built, did not evolve from Walt Disney's original vision of a City of Tomorrow. *Id.* at unnumbered 6.

### 4. Constantino

Finally, the report of Frank M. Constantino is much briefer and includes several disclaimers clarifying that the report was not made in light of any "assessment of any elements depicted in both drawings which may be in the public domain." R6–152, Exh. 4 at 1. This report also includes a list of common elements, but, apart from noting the placement of the globe and the entry pavilion structure, it does not describe or discuss how each element is used in either the Painting or the park. The report concludes that "[d]espite the documented span of nearly twenty years between the original drawing and pos-

sible replicate illustration(s) during that period, the two images do indeed bear a substantially similar appearance to each other." *Id.* at 2.

## C. *Independent Creation*

WorldCo has produced evidence of the independent creation of EPCOT in the form of the affidavit and other testimony of Martin Sklar (currently Vice Chairman and Principal Creative Executive at Walt Disney Imagineering), one of the two men responsible for overseeing its design, planning, and construction. According to Sklar, Disney's idea for an international-themed attraction arose from a concept called International Street, a cluster of buildings, including restaurants and shops, designed to feature other countries and cultures. R8–158, Exh. 5 ¶¶ 8. Sklar explained that Dick Irvine and Bill Cottrell, both Disney executives, drafted memos outlining this concept in 1956, long before the alleged meeting between Jaffray and Disney. *Id.* ¶ 9. After Disney's participation in the 1964 World's Fair, the concept then expanded into an international park with architectural pavilions, water, and pedestrian and boat access. Eventually, this concept merged with the evolved version of Walt Disney's original vision of a "City of Tomorrow." *Id.* ¶ 10. Disney's City of Tomorrow concept had been intended to showcase emerging technology and was originally to feature a centerpiece hotel with shops, covered streets, residential developments, and office buildings radiating out from it. R17–198, Exh. 14 at 41; *Id.*, Exh. 16 at 13–14. Sklar also pointed out that many of the design elements incorporated into EPCOT had been featured at various World's Fairs

held between 1867 and 1967—particularly the use of a globe as a major icon. R8–158, Exh. 5 ¶¶ 13–14.

## D. *Summary Judgment and Other Motions Activity*

WorldCo filed a *Daubert*[2] motion to exclude portions of Corwin's experts' reports, then filed a motion for summary judgment. In response to the motion for summary judgment, Corwin submitted, among other things, new affidavits from his four experts. Corwin claims that these affidavits merely redacted the portions of the original reports no longer applicable after dismissal of the trade secret claims. WorldCo filed a motion to strike certain of Corwin's evidence filed in opposition to the motion for summary judgment—particularly the new affidavits and certain of the testimony concerning Disney's access to the Painting.

On 12 November 2004, the district court granted the *Daubert* motion to strike portions of Corwin's four initial expert reports on the grounds that (1) those portions utilized improper methodology, impermissibly comparing ideas in the Painting and EPCOT rendering and failing to compare expressive or protectable elements; and (2) the reports contained lists of similarities that are inherently subjective and unreliable.[3] The court granted the motion to strike the new affidavits on the ground that they were untimely filed. It also refused to admit the testimony of either Marian Jaffray or Patricia Jaffray Jones regarding Jaffray's alleged meeting with Disney or what he might have taken to such a meeting on the grounds that it was not based on personal knowledge and, thus,

2.  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

3.  The court struck §§ I–VI of the Colbert report, the entire Rydell report, the "Findings of the

Study" section of the Alexander report, and the entire Constantino report. R20–229 at 15–18.

constituted inadmissible hearsay. The court also specifically found that Jones's report of her father's exclamation upon receiving notice of EPCOT was not protected by the excited utterance exception to the hearsay rule because Corwin (1) cited no case law to support his proposition that reading a letter and newspaper article constitutes a startling occasion for the purposes of this exception and (2) failed to produce "any admissible evidence demonstrating that Jaffray had first hand knowledge that the Miniature Worlds painting was left with [Disney]." R20–229 at 35.

In the same order, the court granted the motion for summary judgment in favor of WorldCo. The court first found that Waters's copyright interest in the Painting was valid, giving Corwin standing to sue, and that Corwin had at least raised a genuine issue of material fact as to whether Waters's "selection as to how the castles and villages were arranged in the painting, the colors associated with the elements, and the overall structure and arrangement of the underlying ideas" was original enough to be afforded protection against infringement. *Id.* at 31–33.

The court then reasoned, however, that because it found Corwin had failed to produce any admissible evidence demonstrating access or even an inference of access,[4] Corwin would have to show striking similarity in order to prevail on his infringement claims. The court found, in comparing the Miniature

Worlds Painting with the 1981 Hall/Scifo rendering of EPCOT "[a]t the level of protectable expression," that there was no genuine issue of material fact as to whether the two works are strikingly similar.[5] *Id.* at 38. The court also observed that even if there had been such a genuine issue of material fact, "overwhelming, uncontroverted evidence that [WorldCo] independently created the EPCOT rendering" supports summary judgment in favor of WorldCo. *Id.* at 40–41.

### E.   *Motion for Reconsideration*

Corwin filed motions for reconsideration and clarification, which were considered as a single motion for reconsideration. In a 52-page order, addressing each of Corwin's arguments in light of 255 separate exhibits that were not previously part of the record, the court denied the motions for reconsideration and clarification on the grounds that Corwin had "not pointed to new evidence or case law that create[d] a triable issue of fact on any matter before the Court" and "[b]ecause there [was] no clear error or manifest injustice." R26–288 at 52.

### F.   *Costs*

On 6 December 2004, WorldCo filed both a bill of costs and an application for attorneys fees and costs. On 7 December 2005, the clerk taxed costs in favor of WorldCo in the full requested amount of $171,197.59. R24–238. The application for fees and costs was

---

4. The court specifically rejected Corwin's argument that WorldCo designed EPCOT with sufficiently unusual speed to create an inference of access on the ground that Corwin failed to show that the time period in which WorldCo created EPCOT is unusually short by comparison to industry standards.

5. In coming to this conclusion, the court pointed to differences in (1) both the appearance and the situation of the globe, (2) the level of detail of

depicted villages, (3) the location of pavilions in relation to the water, (4) several structures that exist in the EPCOT rendering but not in the Waters Painting, and (5) the nature and route of the railroad. R20–229 at 38. Finally, the court noted the difference in scale—EPCOT, for the most part, is life size, but the Waters Painting depicts human figures on a significantly larger scale than park attractions. *Id.* at 39.

referred to a magistrate judge. In January, after issuing a report and recommendation ("R&R") as to this application, the initial magistrate judge recused herself and the motion was transferred to a second magistrate judge. The second magistrate judge issued an R&R on 18 January 2005 denying the application for costs as moot because it was duplicative of the costs already taxed by the clerk, and denying the application for attorneys fees without prejudice to refiling "at the completion of the appellate process."[6] R25–270 at 2. WorldCo objected to the recommendation that attorneys fees be denied. Although Corwin responded to this with a reply brief in support of the recommendation to deny attorneys fees, he never filed any objection or otherwise addressed the portion of the report dealing with costs. The district court adopted the report and recommendation in full on 9 May 2005. On 19 May, Corwin filed a motion for leave to object to the bill of costs and an objection to the taxation of costs. The motion for leave was denied on 11 August 2005 on the grounds that it was untimely and lacked any showing of excusable neglect.

On appeal, Corwin argues that (1) the district court wrongfully excluded testimony of Waters's former wife and Jaffray's widow and daughter, "weigh[ing] the evidence in the guise of excluding virtually all of appellant's evidence, thus creating the appearance of an absence of triable facts," Appellant's Br. at 9; (2) the district court wrongfully excluded the reports of his experts in failing to conduct a *Daubert* hearing and by employing "the wrong standard for substantial similarity under copyright law," *Id.* at 5; (3) due to the above and to the application of incorrect standards with regard to access, the district

court erred in granting summary judgment in favor of WorldCo; and (4) Corwin ~~had~~ did demonstrated excusable neglect for his failure timely to object to the taxation of costs, and even if he ~~had~~ did not, the district court's improper taxation ought to be reviewed on the merits.

## II. DISCUSSION

We review the grant of a motion for summary judgment *de novo*. *Rojas v. Florida*, 285 F.3d 1339, 1341 (11th Cir.2002) (per curiam). Because this review will necessarily rely on all admissible evidence contained in the record, we first address Corwin's challenges to the district court's evidentiary rulings.

### A. *Excluded Evidence*

[1] We review for abuse of discretion a district court's ruling on admissibility of evidence. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 556 (11th Cir. 1998). "[W]hen employing an abuse of discretion standard, we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325 (11th Cir.2005).

[2, 3] Further, "[e]vidence inadmissible at trial cannot be used to avoid summary judgment." *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir.1976). "Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." *Citizens Concerned About Our Children v.*

---

6. The first R&R had similarly concluded that the motion for costs was "redundant." R25–262 at 1. It also instructed Corwin that in order to contest the clerk's taxation he would need to file

an objection as provided by the Federal Rules. *Id.* at 2. The second R&R did not contain a similar instruction. *See* R25–270.

*School Bd. of Broward County, Fla.*, 193 F.3d 1285, 1295 n. 11 (11th Cir.1999) (per curiam).

### 1. Testimony About Access

[4] Corwin complains that the district court improperly excluded his evidence prior to consideration of the summary judgment motion, when, taken all together, that evidence would have allowed inferences to be drawn that Disney had access to the Painting in the early 1960s. The court excluded the testimony of Waters's former wife on the ground that, based as it was upon conversations with Waters, it "constitute[d] hearsay and speculation." R20–229 at 3. Ellen Waters has asserted no direct personal knowledge of the painting or the transaction between Waters and Jaffray. The court similarly found the testimony of both Marian Jaffray and Patricia Jaffray Jones to be inadmissible because it was not based on personal knowledge and was therefore speculative. *Id.* at 4, 5. Neither woman claims to have been at the alleged meeting between Jaffray and any Disney representative, and neither claims personal knowledge of what materials Jaffray took with him to any such alleged meeting. Because a court is not required to accept as true testimony that is not based on personal knowledge and because none of this excluded testimony was based on personal knowledge, the district court did not abuse its discretion in disregarding this testimony.[7] *Citizens Concerned About Our Children*, 193 F.3d at 1295 n. 11.

### 2. Expert Witness Reports and Affidavits

#### a. Initial Reports

[5–7] We also review a district court's exclusion of expert reports for abuse of dis-

cretion. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir.2005). As the district court observed "[t]he Federal Rules of Evidence permit experts to offer their informed opinions on technical matters outside the scope of what is presumed to be a jury's ordinary knowledge." R20–229 at 10 (citing Fed.R.Evid. 702). The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–93, 113 S.Ct. 2786, 2795–97, 125 L.Ed.2d 469 (1993). For expert testimony to be admissible under Rule 702,

> the proponent of the testimony must show that:(1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.2001).

[8–10] There is no dispute that the four experts in question were qualified to testify competently regarding matters they intended to address. Rather, the court excluded the expert reports on the grounds that they were based upon improper methodology and failed to assist the trier of fact. Ideas, as opposed to expression of those ideas, are not protected by copyright law. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir.1999) (per curiam) ("well-reasoned" district court

---

7. Corwin asserts that the district court's analysis effectively required each piece of evidence to prove access in order to be admitted. In fact,

the court only required each piece of evidence to be proven not to be speculation or hearsay in order to be admitted

opinion affirmed and annexed to Eleventh Circuit ruling). Thus, if an expert relies on uncopyrightable ideas rather than on expression of those ideas in analyzing alleged copyright infringement the report is excludable. *See Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1180 (9th Cir.2003).

[11, 12]  Similarly, *scenes a faire,* which include "[i]ncidents, characters, or settings that are indispensable or standard in the treatment of a given topic[,] are not copyrightable." *Herzog,* 193 F.3d at 1248; *see also, e.g., Walker v. Time Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir.) (observing that there is no protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop"); *Evans v. Wallace Berrie & Co.,* 681 F.Supp. 813, 817 (S.D.Fla.1988) ("Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oysters or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization."). Thus, if an expert relies solely upon *scenes a faire* or other stock elements not protected by copyright, the report is excludable. Further, lists of similarities are "inherently subjective and unreliable, particularly where the lists contain random similarities, and many such similarities could be found in very dissimilar works." *Herzog,* 193 F.3d at 1257; *see also*

*Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 460 (11th Cir.1994).

[13, 14]  As the district court noted in its order, however, a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way. *See Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) (observing that the arrangement of puppies in a photograph may constitute a protectable element); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 939 (7th Cir.1989) (observing that, although size of greeting cards, color of paper, ink, border designs, general concept of stripes, ellipses and single-side format are not individually protectable, "it is the unique combination of these common elements which form the copyrighted material").[8]

In this case, all four expert reports focus on the concepts and ideas behind the Painting and EPCOT rather than on the expression of those concepts and ideas. Each report also incorporates a list of common elements. As the district court observed with regard to the reports of Colbert, Rydell, and Alexander, although each compares ideas conveyed and similarities in the placement of elements in the Painting and the rendering of EPCOT, each also "fails to delve into the expressive aspects of these ideas." R20–229 at 17. The report of Constantino does not even go so far as to describe the placement of most elements in each work, much less compare the expression thereof. Because neither the ideas nor the placement of stock elements are copyright protectable absent a showing

---

8.  We have also recognized that a selection, arrangement, or organization of facts is copyrightable as a compilation if sufficiently original. *See MiTek Holdings, Inc. v. Arce Eng'g Co.,* 89 F.3d 1548, 1558 (11th Cir.1996).  Because, § 101 of the Copyright Act of 1976 defines a compilation as "a work formed by the collection and assem-

bling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship," we conclude that the Painting is not appropriately analyzed as a compilation. 17 U.S.C. § 101.

that they thereby constituted expression of ideas, the district court did not abuse its discretion in excluding all portions of the reports based thereon.

### b.  Supplemental Affidavits and Report

The Federal Rules of Civil Procedure provide that a trial court may set a deadline for expert disclosures. Fed.R.Civ.P. 26(a)(2)(C). We have held that a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir.2003).

[15, 16]  In this case, the court set a deadline of 1 June 2004 for disclosure of Corwin's expert reports and a deadline of 15 October 2004 for financial expert reports. The affidavits, which appear both to restructure and to supplement the prior expert reports but address no financial issues whatsoever, were filed on 5 October. Although Alexander's supplemental report does address the financial impact of EPCOT on Walt Disney World, it was not filed until 19 October. Accordingly, the affidavits and report were untimely filed. Additionally, as the district court noted, even if the affidavits and supplemental report contained nothing new, the underlying methodology comparing concepts and ideas is the same and would thus also be excludable under *Daubert*.[9] Either way, the district court did not abuse its discretion in excluding them.[10]

### 3.  Excited Utterance

Corwin also argues that the district court improperly excluded the testimony of Patricia Jaffray Jones regarding her father's reaction to receiving a letter containing a newspaper clipping about EPCOT. He asserts that the reaction is admissible under the excited utterance exception to the hearsay rule. Federal Rule of Evidence 803(2) provides an exception to the general inadmissibility of hearsay for "[a] statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition."

It is unnecessary that we reach the issue of whether the district court abused its discretion on the excited utterance issue because the statement provides no specific evidence that Disney had actual access to the Painting.

### B.  Summary Judgment

As noted, we review the grant of a motion for summary judgment *de novo*. *Rojas*, 285 F.3d at 1341. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "To survive [a] motion for summary judgment, [the nonmoving party] must establish that there is a genuine issue" for trial.

---

9.  For instance, Colbert states that "another major commonality of these projects is the underlying poetic and symbolic structure that they embody. This poetic and symbolic condition sets the people and traditions of the world on a path toward future harmony through technology." REExh.2 at 8. Colbert never shows how the Painting and the rendering of EPCOT (or the park itself) similarly express this concept or goal.

10.  Although Corwin argues that the district court erred in failing to conduct a *Daubert* hearing before excluding the affidavits, Corwin did not request a hearing at the time and, although they are often helpful, hearings are not prerequisite to such determinations under the Federal Rules or established law. *See City of Tuscaloosa*, 158 F.3d at 565 n. 21.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

[17–19]  To establish copyright infringement, "a plaintiff must prove (1) [its] ownership of the copyright and (2) 'copying' by the defendant or person who composed the defendant's work." *Ferguson v. NBC,* 584 F.2d 111, 113 (5th Cir.1978).  To demonstrate copying, a plaintiff must show "that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works." *Herzog,* 193 F.3d at 1249.  Access requires proof of "a reasonable opportunity to view" the work in question. *Id.; see also Ferguson,* 584 F.2d at 113.

### 1. Access

[20]  Here, Corwin offers no evidence to demonstrate that Disney had access to the Painting.  Even if the excited utterance was admissible, it contains no reference to the Painting, and there is no other admissible evidence that the Painting was included in the materials Jaffray took with him to the alleged meeting.  Also, Jaffrey's correspondence with Reddy and the note written by Sklar provide no indication that Disney ever had access to the Painting.  Accordingly, we

conclude that the evidence offered by Corwin is insufficient to raise a genuine issue of material fact as to access.

### 2. Striking Similarity

[21, 22]  "Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar."[11]  *Calhoun v. Lillenas Publ'g,* 298 F.3d 1228, 1232 n. 6 (11th Cir. 2002) (per curiam) (citing *Herzog,* 193 F.3d at 1249; *Benson v. Coca-Cola Co.,* 795 F.2d 973, 975 n. 2 (11th Cir.1986) (per curiam); *Ferguson,* 584 F.2d at 113).  Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir.1984); *see also* M. Nimmer & D. Nimmer, 4 Nimmer on Copyright § 13.02[B] (2005).

[23]  First, as discussed, the expert reports opining as to the "striking similarity" between the Painting and EPCOT were properly excluded by the district court.  Of those portions of the reports that remain, none properly supports any assertion of striking similarity.[12]  Although both discuss

---

11.  Corwin also argues that the substantial similarity standard (rather than the striking similarity standard) is the proper standard even without evidence of access.  He cites *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210 (11th Cir.2000), in support of this proposition.  In that case, we did state that "no matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." *Id.* at 1214 (emphasis omitted).  However, when examined in context, *Leigh* appears here to have used the word "copying" in place of "access."  This is further borne out by the fact that the higher "striking similarity" standard, for cases lacking evidence of ac-

cess, has been employed in Eleventh Circuit cases both before and after *Leigh. See Ferguson,* 584 F.2d at 113; *Calhoun,* 298 F.3d at 1232 n. 6.

12.  The remainder of Colbert's report addresses Waters's creative contribution to Jaffray's overall concept, his authorship of the Painting and other graphics, and then concludes that the Painting was "the source of the fundamental conception behind EPCOT in its final built form."  R6–152, Exh. 1 at 7.  The remainder of Alexander's report analyzes EPCOT as a theme park and discusses its creation but fails to discuss the Painting in any way, or to analyze expression of any common elements in the Painting and EPCOT.

similar arrangement of otherwise unprotectable elements, neither expert explains the originality of the Waters arrangement of elements or points out how, precisely, the expressive effect of Waters's arrangement is duplicated by either EPCOT or the rendering thereof.

[24]  Second, WorldCo has presented evidence of independent creation, tracing the development of EPCOT from the ideas for International Street and City of Tomorrow, through Disney's participation in the 1964 World's Fair, into what it had become by the time it opened. Corwin attempts to rebut WorldCo's evidence of independent creation with both Alexander's testimony as to the absence of a coherent development in EPCOT's design and with his argument that EPCOT was designed with suspiciously unusual speed.[13]  As the district court noted, however, both approaches are merely speculative and neither is supported by the record. The record contains many drawings and much correspondence related to the development of the 1964 World's Fair exhibits, the International Street concept, and the designs for the combination of the international and futuristic theme parks. Alexander's conclusory statements regarding independent creation are insufficient to raise a genuine issue of material fact as to this issue.

Accordingly, in the face of WorldCo's evidence of independent creation, of the comparisons to World's Fair concepts and designs, and of the significant differences between the two manifestations—the appearance of the globe, the level of detail in the villages, the location of pavilions in relation to the lake, the presence of several elements at EPCOT not present in the Painting, the route and nature of the rail system, and the overall scale of the park— we conclude that Corwin has failed to raise a genuine issue of material fact as to striking similarity. Accordingly, the district court did not err in granting summary judgment in favor of WorldCo.

C.  *Motion for Reconsideration*

[25]  We review a district court's denial of a motion for reconsideration for abuse of discretion. *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1121 (11th Cir.2004). Because we find the record supports the grant of summary judgment, the district court did not abuse its discretion in denying the motions for reconsideration and clarification.

D.  *Costs*

[26]  Corwin challenges the district court's taxation of costs against him. A district court's award of costs is reviewed for abuse of discretion. *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.,* 538 F.2d 1116, 1121–22 (5th Cir.1976); *Kinnear–Weed Corp. v. Humble Oil & Ref. Co.,* 441 F.2d 631, 636–37 (5th Cir.1971). Federal Rule of Civil Procedure 54(d)(1) provides that, after costs are taxed by the clerk, an objection to the award may be made only "on motion served within 5 days thereafter." We have held that it is fully within the discretion of the district court to decline to review an untimely objection to costs. *See Sayers v. Stewart Sleep Center, Inc.,* 140 F.3d 1351, 1354 (11th Cir. 1998) (holding a district court "acted within its discretion in declining to consider [an] opposing memorandum" to taxation of costs that was untimely filed).

13.  *See supra* note 4.

CORWIN v. WALT DISNEY CO.

[27]  In this case, Corwin's objection to the costs award was plainly untimely, as he filed his motion for leave over five months after the costs were taxed by the clerk.[14] Because the objection was untimely, the district court did not abuse its discretion in failing to address the objection on the merits.

[28]  Corwin argues, however, that he established excusable neglect, so as to overcome the time bar set forth in Rule 54(d). Federal Rule of Civil Procedure 6(b) permits a district court to review the merits of a motion that is pending before it, despite its untimely nature, "where the failure to act was the result of excusable neglect." In this case, Corwin contends that, although he understood the five day deadline, he believed that filings related to costs and fees tolled it, at least until the magistrate judge made an R&R and perhaps until the district court adopted that R&R. Because Corwin maintains that this mistake regarding the calculation of time for filing a costs objection constituted excusable neglect, he argues that the district court should have reviewed the merits of his objection, notwithstanding its belated nature.

[29]  We review a district court's determination regarding excusable neglect for abuse of discretion. *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997 (11th Cir. 1997). Despite the exceptional language of Rule 6(b), we have made clear that "counsel's misunderstanding of the law cannot constitute excusable neglect." *Id.* at 999. Accordingly, the district court did not abuse its discretion in refusing to find excusable neglect in Corwin's case, and thereby declining to address the merits of his objection. Because Corwin's objection to the district court's costs order was well beyond the five day deadline, and because he failed to show excusable neglect, the district court did not abuse its discretion in declining to consider the objection.

III.  CONCLUSION

Corwin appealed the district court's grant of summary judgment in favor of WorldCo, the underlying evidentiary rulings, and an order taxing costs. Because, upon *de novo* review, we conclude that Corwin has failed to raise a genuine issue of material fact as to access or striking similarity, we AFFIRM as to summary judgment. Additionally, because Corwin's objection to the award of costs to WorldCo was untimely, and because Corwin failed to establish excusable neglect, the court acted properly in declining to consider the merits of that objection. Accordingly, we AFFIRM the district court's order awarding costs to WorldCo.

14.  Costs were taxed by the clerk on 7 December 2004.  Corwin's objection to the costs award was not filed until 19 May 2005.

U.S. Court of Appeals, Eleventh Circuit—Thomson/West, Saint Paul, Minnesota

A True Copy - Attested
Clerk U.S. Court of Appeals
Eleventh Circuit

By: _____

Deputy Clerk
Atlanta, Georgia