# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ORRIN MONROE CORWIN,**

**Plaintiff,**

**-vs-**                                    **Case No.  6:02-cv-1377-Orl-19KRS**

**WALT DISNEY WORLD COMPANY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **APPLICATION FOR APPELLATE ATTORNEY'S FEES (Doc. No. 334)** |
| **FILED:** | **June 25, 2007** |
| | _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. | |
| **MOTION:** | **DEFENDANT WALT DISNEY WORLD CO.'S APPLICATION FOR FEES AND COSTS PURSUANT TO THE COPYRIGHT ACT, FOR AN AWARD OF FEES AND COSTS UNDER 28 U.S.C. § 1927, AND FOR AN ORDER TO SHOW CAUSE (Doc. No. 337)** |
| **FILED:** | **July 5, 2007** |
| | _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part. | |

Defendant Walt Disney World Co. ("Worldco"), as the prevailing party in the district court

and on appeal, seeks to recover its attorney's fees from Plaintiff and members of the Jaffray family

pursuant to the Copyright Act, 17 U.S.C. § 505, and, under 28 U.S.C. § 1927, against Plaintiff's counsel.  Doc. No. 337.  Plaintiff's counsel have filed  Responses to the Motion for Attorney's Fees (Doc. Nos. 347, 342), arguing against the imposition of fees under the Copyright Act or 28 U.S.C. § 1927.  The Court finds that an award of fees is warranted under the Copyright Act for the litigation and the appeal, but an award of fees is not warranted under 28 U.S.C. § 1927.

# I. BACKGROUND FACTS[1]

Plaintiff Orrin Monroe Corwin is the former neighbor of Mark Waters II and the sole heir to his estate. Corwin asserts that Waters, while living in Hawaii in the 1960s, painted a rendering of a concept for an international theme park in miniature ("Miniature Worlds Painting" or "Painting"). Waters allegedly did so at the request of Robert Jaffray, who had conceived of the idea after viewing miniature villages elsewhere, particularly in Britain.  Jaffray's concept entailed cities, villages, and landscapes representing nineteen nations from six continents. It included animals, buildings, landscaping, and human figures carved from wood. For each nation represented, the model would include representations of places of particular historical or geographical interest including recognizable structures such as the Roman Coliseum or London's Big Ben. Everything was to be in miniature. Shortly after the Painting was complete, the Jaffrays left Hawaii. Jaffray did not keep in touch with Waters.  Corwin asserts that Jaffray attempted to take his theme park concept to Walt Disney in the 1960s, and that he took the Painting and a presentation of the concept to a meeting with a Disney representative in 1962 or 1963, but later received a rejection letter. Worldco denies such a meeting occurred.

---

[1]The Background is taken in large part from the one provided by the Eleventh Circuit in *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1243-45, 1247 (11th Cir. 2007).

Corwin alleges that EPCOT, which was opened by Worldco in 1982, was copied from Waters's illustration of Jaffray's concept. He particularly points to a similarity between the Painting and a 1981 Hall/Scifo rendering of EPCOT. Waters allegedly painted the Miniature Worlds Painting as a freelance artist and retained his ownership of the copyright interest. Corwin, who only recently found out about his inherited interest in the Painting and the claim, registered the copyright in 2002 and sued Worldco for copyright infringement shortly thereafter.  In support of his assertions regarding Disney's access to the Painting, Corwin has produced the testimony of Waters's former wife, Jaffray's widow, and Jaffray's daughters. He has also produced two letters and two notes.

Waters's former wife, Ellen Pauline Waters, denied any knowledge of the Miniature Worlds Painting prior to having seen a story about it in a Toledo, Ohio newspaper in 2000.  She said that Waters had not discussed the Jaffrays in detail but that he had told her he was doing work for Jaffray. She also reported that Waters had talked to her about the Miniature Worlds project which she understood was to be located outside Washington, D.C.  Marian Jaffray, Jaffray's widow, testified that she believed Jaffray had met with a representative of Walt Disney in 1962 or 1963.  She also testified that Jaffray ultimately received a rejection letter. Marian Jaffray was not at the alleged meeting and conceded that she did not know what Jaffray took with him to that meeting, but "just assumed" he took the "total picture of his plans."  She was unable to produce the rejection letter.

Jaffray's daughter, Patricia Jaffray Jones, testified that she remembered picking her father up at a train station after an alleged meeting with Disney. She speculated that Disney did not return the materials Jaffray had used in his presentation at the alleged meeting until a couple of months thereafter. However, she could not personally confirm the presence of the Painting among these materials, nor did she attend the alleged meeting herself.  Jones also testified that when her father

viewed a depiction of EPCOT sent to him by mail in 1980, she heard him say, "Oh, my god, they built it. . . . I left everything with them. . . . They must have photographed and copied everything. No wonder they kept it for a month."  Jones testified that in connection with this statement, Jaffray specifically mentioned blueprints, his site map, and "the drawings."

As for the documentary evidence, the first letter, dated 10 May 1963, is from Jaffray to Joseph P. Reddy, Director of Public Relations at Disney. In the letter, which apparently renews an already rebuffed offer to bring his idea to Disney, Jaffray expresses his understanding that Walt Disney "has his hands completely full and cannot consider new projects at this time." A 27 May note from Reddy to William Cottrell, one of Disney's upper level executives, inquires "Is there anything we can do on this?"  It is unclear from the record, however, to what the note refers. Finally, a letter dated 6 June 1963 from Reddy to Jaffray states that Disney is "only designing the Exhibits" for the World's Fair and that "Ford and General Electric let the contracts for manufacturing the miniatures and the actual buildings."  Reddy informed Jaffray that the "new projects for Disneyland are already in work for the next few years" and concluded the letter by expressing regret that he could be of "no more help to [Jaffray]." The final note comes from the period of time during which Worldco was developing EPCOT. Martin Sklar, one of the leaders of the EPCOT design team, apparently during a meeting, drew an arrow on a piece of paper. The arrow runs from left to right and to the left of it is written "Miniature World" and "Micro Miniature World." To the right of the arrow is written "Cat = 'Route to the Future.' " At the top of the same page are another set of notes referring again to "the Cat" as well as to " 'Our Town' Narrator" and "Rabbit." Sklar testified that he does not remember what he was thinking about when he made these notes.

WorldCo produced evidence of the independent creation of EPCOT in the form of the affidavit and other testimony of Martin Sklar (currently Vice Chairman and Principal Creative Executive at Walt Disney Imagineering), one of the two men responsible for overseeing its design, planning, and construction. According to Sklar, Disney's idea for an international-themed attraction arose from a concept called International Street, a cluster of buildings, including restaurants and shops, designed to feature other countries and cultures. Sklar explained that Dick Irvine and Bill Cottrell, both Disney executives, drafted memos outlining this concept in 1956, long before the alleged meeting between Jaffray and Disney. After Disney's participation in the 1964 World's Fair, the concept then expanded into an international park with architectural pavilions, water, and pedestrian and boat access. Eventually, this concept merged with the evolved version of Walt Disney's original vision of a "City of Tomorrow." Disney's City of Tomorrow concept had been intended to showcase emerging technology and was originally to feature a centerpiece hotel with shops, covered streets, residential developments, and office buildings radiating out from it. Sklar also pointed out that many of the design elements incorporated into EPCOT had been featured at various Worlds Fairs held between 1867 and 1967 – particularly the use of a globe as a major icon.

The district court set a final discovery cut-off in April 2004, with expert witness disclosures due from Corwin in June 2004. Corwin timely disclosed the reports of four experts: Thomas Colbert, Robert Rydell, Peter Alexander, and Frank Constantino. In response to Worldco's *Daubert* motion, Plaintiff untimely filed supplemental affidavits of these experts on October 5 and 19, 2004. *Corwin,* 2004 WL 5486639 at *12.

## II. RELIEF SOUGHT

Chief Judge Fawsett granted summary judgment to Worldco on November 12, 2004. Doc. No. 229; published in Westlaw as *Corwin v. Walt Disney Co.*, 2004 WL 5486639 (M.D. Fla. Nov. 12,

2004).  The Eleventh Circuit affirmed her rulings in a published opinion on January 22, 2007. *Corwin v. Walt Disney Co.*, 475 F.3d 1239 (11th Cir. 2007).

Worldco, as the prevailing party, now[2] seeks to recover its attorney's fees pursuant to the Copyright Act, 17 U.S.C. § 505, against Plaintiff and non-parties Marian Jaffray, Patricia Jaffray Jones, and Lynn Tucker ("the Jaffrays"), jointly and severally.  Doc. No. 337.  Worldco also seeks an award of fees under 28 U.S.C. § 1927 against Plaintiff's counsel:  John Stemberger, and the law firms of Silverman & Santucci (including individual attorneys Melvin Silverman, Michael Santucci, and S. Tracy Long) and De la O and Marko (including individual attorneys Miguel de la O and Daniel Leyton).  Doc. No. 337.  In addition, Worldco seeks an order to show cause directing the Jaffrays to show cause why they should not be held individually liable for Worldco's attorney's fees and costs.  Doc. No. 337.

Counsel Stemberger, de la O, and Leyton withdrew after Judge Fawsett entered the order granting summary judgment to Worldco.  *See* Doc. Nos. 315, 317, 321.  These attorneys have limited their Response to the Motion for Attorney's Fees (Doc. No. 347) to argue against  the imposition of fees under § 1927.  Plaintiff's continuing counsel, Silverman, Santucci, and Long, argue on behalf of Plaintiff, the Jaffrays, and themselves against an award of fees under either the Copyright Act or under § 1927.  Doc. No. 342.

### A. LEGAL STANDARD FOR FEES UNDER THE COPYRIGHT ACT

Worldco seeks to recover its attorney's fees as the prevailing party under the Copyright Act, 17 U.S.C. § 505, from Plaintiff and non-parties Marian Jaffray, Patricia Jaffray Jones, and Lynn Tucker (collectively "the Jaffrays"), jointly and severally.  Worldco argues it is entitled to attorney's

---

[2]Worldco originally moved for fees prior to the appeal, but the Court deferred consideration until after completion of the appellate process.  *See* Doc. Nos. 231, 270, and 289.

fees because it is the prevailing party, Plaintiff intentionally delayed litigation and increased Worldco's costs, and Plaintiff did not have reasonable grounds for his arguments.  Worldco also argues that its fees and costs are reasonable.

Plaintiff contends "[t]his was a fairly litigated claim of local historical significance, which was well supported. Plaintiff was simply defeated on "technical evidentiary grounds on one element of its claim" and there "is no cause for additional insult to Plaintiff's injury through discretionary awards of attorneys' fees."  Doc. No. 342.

It is the general rule in this country that, unless Congress provides otherwise, parties are to bear their own attorney's fees.  *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (tracing the origins and development of the American Rule)).  Pursuant to 17 U.S.C. § 505, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party. . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.  Unlike certain other areas of federal law, the Copyright Act neither mandates an award of fees nor favors one party over the other in regard to such an award.

The Supreme Court has stated that for purposes of § 505 "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty*, 510 U.S. at 534 (declining to adopt British Rule by which fees would be awarded as a matter of course to prevailing parties).

In determining whether to award attorney's fees under § 505, the district court "should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act," *i.e.,* "by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that the

boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works." *Mitek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27).  Nonexclusive factors the court is to consider in determining whether to award prevailing party attorney fees under the Copyright Act include frivolousness, motivation, objective unreasonableness (both in factual and in legal components of case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty,* 510 U.S. at 534; *Mitek Holdings*, 198 F.3d at 842-43.  "When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim." *Lotus Dev. Corp. v. Borland Int'l Inc.*, 140 F.3d 70, 75 (1st Cir. 1998).

The Second Circuit has recognized that "objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted" because "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001); *see also Baker v. Urban Outfitters, Inc*., 431 F. Supp.2d 351, 357 (S.D. N.Y. 2006)*, aff'd*, 2007 WL 2908272 (2nd Cir. 2007). "This is because such attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law." *Ariel (UK) Ltd. v. Reuters Group PLC*, No. 05 Civ. 9646, 2007 WL 194683, at *1 (S.D. N.Y. Jan. 24, 2007) (citing *Fogerty*, 510 U.S. at 527).

The district court in *Chivalry Film Productions v. NBC Universal, Inc.* discussed the reasoning behind the award of fees to a prevailing defendant in various post-*Fogerty* "objectively unreasonable" cases:

> The mere fact that a defendant has prevailed, however, does not necessarily equate with an objectively unreasonable claim. To hold otherwise would establish a *per se* entitlement of attorney's fees whenever issues pertaining to judgment are resolved against a copyright plaintiff. . . . This is not a correct construction of the law. Similarly, the fact that a defendant has prevailed on a motion to dismiss or on summary judgment does not require the court to award fees. However, if a copyright claim is clearly without merit or otherwise patently devoid of legal or factual basis, that claim ought to be deemed objectively unreasonable, and an award of fees and costs is then proper. . . . Moreover, although the plaintiff in this case did not engage in a campaign of vexatious litigation, the need for deterrence against objectively unreasonable copyright claims is significant. Just as attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law, the denial of such awards in objectively unreasonable cases also disserves the purposes of copyright law, by failing to protect the owners of valid copyrights from the cost of frivolous litigation. Furthermore, the denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort that an award of fees and costs is designed to chill. Future litigants should be discouraged from comparable behavior.

__ F.Supp.2d __, 2007 WL 4190793, *2-3 (S.D. N.Y. 2007) (internal quotation marks and citation omitted) (awarding fees to prevailing defendant granted summary judgment on screenwriter's claims of copyright infringement by two films where "no reasonable trier of fact could find that plaintiff had established substantial similarity of work or alternatively that the films were based on independent prior creations that pre-dated plaintiff's copyrights"). With these standards in mind, the Court turns to the facts of this case.

## B. ANALYSIS OF THE COPYRIGHT ACT FEE CLAIM

### 1. Prevailing Party

Worldco is clearly the prevailing party inasmuch as the Eleventh Circuit affirmed summary judgment in favor of Worldco as to Plaintiff's copyright infringement claim. Plaintiff does not dispute

that Worldco was the prevailing party.  To determine whether a fee should be awarded, the Court should consider the rest of the non-exclusive list of factors suggested by the Supreme Court.  *See Mitek Holdings*, 198 F.3d at 842 (citing *Fogerty*, 510 U.S. at 526-27).

### 2. Frivolousness

Two elements must be proven for a valid copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."*Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). If the plaintiff does not have direct proof of copying, the plaintiff may show copying by establishing that the defendants had access to the copyrighted work and that the works are "substantially similar." *Id*. at 1248.  If a plaintiff cannot show access, he may prevail by demonstrating that the works are "strikingly similar." *Id.*

Access under the Copyright Act requires proof of "a reasonable opportunity to view" the work in question.  *Herzog*, 193 F.3d at 1249.  Judge Fawsett determined Plaintiff had failed to show that Worldco had access to the Miniature Worlds Painting.  *Corwin,* 2004 WL 5486639 at *18-19. "Given the evidence presented by Plaintiff, a finding of access would be based on impermissible speculation and conjecture," *i.e.*, hearsay from Jaffray relatives that Col. Jaffray (1) attended a meeting with Worldco in the 1960's and (2) his exclamation, "They built it [etc.]" upon receiving a newspaper clipping about Epcot.  2004 WL 5486639 at *19.  The Eleventh Circuit affirmed Judge Fawsett's grant of summary judgment to Worldco on the issue of access, holding that there was no admissible evidence that the Painting was included in the materials Jaffray took with him to the alleged meeting with Disney.  *Corwin*, 475 F.3d at 1253.  The Eleventh Circuit also held other evidence of Jaffray's contact with Worldco and an internal Worldco document did not provide any indication that Worldco ever had access to the Painting.  *Id.*

Judge Fawsett did not reach the issue of substantial similarity because Plaintiff failed to establish a genuine issue on accessibility.  Instead, Judge Fawsett looked at alternative means of proving infringement, *i.e.*, striking similarity, but held that there was no genuine issue of material fact as to whether the two works were strikingly similar.  *Corwin,* 2004 WL 5486639 at *20-21. The Eleventh Circuit, after affirming the striking of Plaintiff's expert reports as properly excluded, affirmed that the district court's finding of no striking similarity.  475 F.3d at 1253.

Worldco contends that Plaintiff's "obstinate prosecution of a manifestly untenable and unprovable" copyright claim was frivolous.  In this case, Plaintiffs' copyright claims did not fall to the level of "frivolousness," which in copyright cases, is usually found in cases in which the claimant does not even *own* the copyright in question or has granted a license to the alleged infringer but sues for infringement nonetheless.  *See*, *e.g.*, *Amadasun v. Dreamworks, LLC,* 359 F.Supp.2d 1367, 1373 (N.D. Ga. 2005) (holding claims to be frivolous where plaintiff brought a copyright infringement claim against the defendants despite the fact that he did not own, and knew, or should have known that he did not own, valid copyrights for works sued upon); *see also Lowe v. Loud Records*, No. Civ.A. 01-1791, 2004 WL 527831, *3 (E.D. Pa. Nov. 20, 2003) (fees awarded where summary judgment was granted based on plaintiff's own testimony that he had granted defendants a nonexclusive license in the work being allegedly infringed and thus he "defeated his own claim"), *aff'd*, 126 Fed. Appx. 545 (3d Cir. 2005).

In this case, Corwin, sole heir of Mark Waters II's estate, obtained a certificate of registration for Waters's painting of "Miniature World" in 2002. 2004 WL 5486639 at *5.  Plaintiff's expert Thomas Colbert opined, based on comparison to other Waters paintings, that Waters painted the Miniature Worlds Painting based on the distinctive color palate and texture of the paintings, the brushwork technique, and common details and texture.  *Id.* at *14.  As Judge Fawsett determined,

Plaintiff's claims of ownership and validity were sufficient to withstand Worldco's summary judgment motion on ownership and validity issues.

Moreover, Worldco did not move to dismiss the copyright claims on ownership or validity grounds (only on limitations grounds -- *see* Doc. No. 16). Additionally, although Worldco makes the case that certain of Plaintiff's non-copyright claims were doomed from the start, such as claims under the Visual Artists' Rights Act of 1990 and trade secret law, this does not address whether Plaintiff's *copyright* claims were "frivolous" or "objectively unreasonable" as that standard has developed under the Copyright Act.

### 3. Objective Unreasonableness of Copyright Claims

**a. Principles--**Cases applying the objectively unreasonable standard predictably run in both directions and are highly dependent on case specific facts and circumstances. The mere fact that summary judgment was granted to Worldco, in and of itself, also does not speak to whether Plaintiff's claims were "objectively unreasonable." *See, e.g., FASA Corp. v. Playmates Toys, Inc.*, 1 F.Supp.2d 859, 864 (N.D. Ill.1998) ("Not all unsuccessfully litigated claims are objectively unreasonable."); *Garnier v. Andin Int'l, Inc.*, 884 F.Supp. 58, 62 (D. R.I. 1995) (holding that although plaintiff's suit was "premised on an erroneous view of the law," it was not unreasonable).

As Judge Fawsett previously noted in *CrossPointe, LLC v. Integrated Computing, Inc.,* "[s]ince the *Fogerty* Court reaffirmed the discretion permitted by § 505, several courts have exercised that discretion to deny attorney's fees to prevailing parties in copyright actions." Case No. 6:03-cv-558, 2005 WL 1677460, *4 (M.D. Fla. Jul. 18, 2005) (citing *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 382-83 (5th Cir. 2004) (affirming district court's denial of fees to prevailing defendant where claims were not "frivolous, objectively unreasonable, or without proper motive" and an award would not deter future meritless lawsuits); *Lotus Dev. Corp. v. Borland Int'l,*

*Inc.*, 140 F.3d 70, 74-75 (1st Cir. 1998) (in a case of first impression, denial of fees was within court's discretion where "both parties had important economic interests in the litigation," deterrence was not a factor, and plaintiff's unsuccessful claim was reasonable); *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 754 (11th Cir. 1997) (affirming denial of defendant's motion for fees in light of *Fogerty* factors without analysis); *Clark v. Hudson Bay Music, Inc.*, 1996 WL 547186, *2 (2d Cir. 1996) (denial of plaintiff's request for fees affirmed where damages and future royalties made considerations of deterrence and compensation irrelevant); *Johnson v. Tuff-N-Rumble Mgmt., Inc.*, 2000 WL 1145748, *11 (E.D. La. 2000) (denying defendant's request for fees where plaintiff's claims were colorable and not objectively unreasonable and where award would not deter future baseless suits); *Compaq Computer Corp. v. Procom Tech., Inc.*, 908 F.Supp. 1409, 1429 (S.D. Tex. 1995) (declining to award fees to prevailing plaintiff where deterrence was served by injunctive relief and defendant's position was not objectively unreasonable); *Bourne Co. v. Walt Disney Co.*, 1994 WL 263482, *2 (S.D. N.Y. 1994) (denying plaintiff's motion for fees where case involved unsettled issues of law and defense raised by unsuccessful defendant was "fair ground for litigation" even if not accepted by jury), *aff'd*, 68 F.3d 621 2nd Cir. 1995); *see also Donald Frederick Evans & Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 916 (11th Cir. 1986) (in pre-*Fogerty* case, affirming denial of prevailing defendant's fee request where plaintiff's claims were colorable)).

However, there are also a number of cases post-*Fogerty*, that have awarded fees to prevailing defendants for plaintiffs' objectively unreasonable claims. *See, e.g.*, *Amadasun v. Dreamworks, LLC*, 359 F.Supp.2d 1367, 1375-76 (N.D. Ga. 2005) (awarding fees for defense of screenwriter-plaintiff's claims against two large film companies which were "objectively unreasonable"); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004) (awarding fees to prevailing defendant where plaintiffs chose to sue hundreds of defendants all at the same time, regardless of the strength

of the individual claims for contributory infringement and negligence based on shaky facts and even shakier legal arguments and inevitably swept up parties against whom they had little or no chance of succeeding and defendants prevailed on a statute of limitations defense).

**b.   Analysis--**Judge Fawsett made several determinations, each affirmed by the Eleventh Circuit, on the insufficiency of Plaintiff's evidence.  Along with the delay in filing the case and the obvious dearth of witnesses with first-hand knowledge, and the putative amount of damages sought, a finding that Plaintiff's claims were objectively unreasonable is mandated.

First, Judge Fawsett found that there was "overwhelming, uncontroverted evidence that Defendant independently created the Epcot rendering." *Corwin*, 2004 WL 5486639 at *21.  "In the Eleventh Circuit, proof of access and substantial similarity raise a presumption of copying that may be rebutted with evidence of independent creation." *Id*. at *21 (citing *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002)).  Even assuming *arguendo* that Plaintiff's claims had survived summary judgment on the issues of access and/or striking similarity, Worldco's "overwhelming" proof of independent creation would have defeated Plaintiff's copyright infringement claim. Plaintiff's claims that Worldco's Epcot rendering was developed with unusual speed and Disney was sorely lacking in good ideas for the design were also found by Judge Fawsett to be "mere speculation" and "unsupported by the record." *Id*. at *22.

On the second pivotal issue upon which Judge Fawsett granted summary judgment – the issue of access – Judge Fawsett also found that Plaintiff's evidence was "impermissible speculation and conjecture." *Id.* at 19.  Although Plaintiff in the first instance was able to present a genuine issue of material fact as to the originality of the Miniature Worlds painting, because Plaintiff did not have direct evidence of copying, Plaintiff could alternatively demonstrate the Defendant had access to the Miniature Worlds Painting and the works were substantially similar; or if unable to show access, by

showing that the works were strikingly similar. *Id*. at *17 (citing *Herzog*, 193 F.3d at 1248). Judge Fawsett described and rejected all four pieces of hearsay or unauthenticated "access" evidence Plaintiff proposed, either because the evidence was inadmissible speculation and conjecture or because Plaintiff failed to prove an essential comparison point.

First, Judge Fawsett rejected Plaintiff's "access" evidence based on Jaffray's correspondence with Reddy, a high-ranking Worldco employee, because Plaintiff failed to produce any admissible evidence that the Miniature Worlds painting was actually enclosed with the Jaffray correspondence. *Id*. at *17. Judge Fawsett similarly rejected the hearsay testimony of Marian Jaffray and Patricia Jaffray Jones regarding a meeting Col. Jaffray attended with Disney in 1962 or 1963 because it was based on conversations that they had with Col. Jaffray, rather than their first hand knowledge, since they did not attend the alleged meeting. *Id*. at 18. The third piece of unpersuasive evidence Plaintiff proffered was the note by Epcot designer Martin Sklar who scribbled the term "Miniature World," with the terms "MicroMiniature World" and "cat" with an arrow pointing to the term "route to the future"; Judge Fawsett rejected this evidence because Sklar did not even recall why he scribbled the term "Miniature World." *Id*.

Plaintiff's reliance on Ms. Jones' obvious hearsay testimony that, when her father viewed an article and picture of Epcot in 1980, he said " 'Oh, my god, they built it. . . . I left everything with them . . . . They must have photographed and copied everything. No wonder they kept it for a month," was also misplaced in that Judge Fawsett found it inadmissible and not to constitute an excited utterance primarily because "receiving an article about Epcot is not startling." *Id*. at *18. Lastly, Plaintiff's argument that Defendant designed Epcot with unusual speed, which in certain cases may constitute some evidence of access, was unsupported by any evidence of comparison to industry standards. *Id*.

at *18.  "Given the evidence presented by Plaintiff, a finding of access would be based on

impermissible speculation and conjecture."  *Id.*

Moreover, on the issue of striking similarity, Judge Fawsett found that "[b]ecause the

Miniature Worlds painting and Epcot rendering are *remarkably* different at the level of protectable

expression, the Court finds that there is no genuine issue of fact as to whether the two works are

strikingly similar."  *Id.* at *21.  Those "remarkable" differences in the concepts of the globe, water,

transportation system, and international pavilions (*id.* at *20) which were expressed differently in the

two renderings included:

> The globe in the Miniature Worlds painting is surrounded by water and does not
> appear to be accessible to the public. The globe is a world map and is located near the
> parking lot just before the area where patrons enter the park. There is a structure
> surrounding the globe that appears to allow patrons to observe the globe. The structure
> is elongated and sits on the waterway. In the Epcot rendering, the globe is not a globe
> of the earth, but rather is a whitish-silver color. The globe is positioned near the
> ticketing area and is actually inside the park.
>
> In the Miniature Worlds painting, it is clear that there are villages, but it is very
> difficult to discern what countries those villages represent. The villages are grey in
> color, contain small houses and castles, and are located along the waterfront as well
> as away from the waterfront. One of the villages contains an Eiffel Tower. In the
> Epcot rendering, the international pavilions contain significant detail, the exact colors
> and shapes of the pavilions are drawn out in excruciating detail, and the pavilions are
> located exclusively around the lagoon. The Epcot rendering also contains a number
> of structures that the Miniature Worlds painting does not contain. For example, the
> Epcot rendering has two clear pyramid structures near the lagoon, a small clear
> space-ship-like structure is positioned to the right of the clear pyramids, a large brown
> pyramid structure appears to the left of the globe, and a large amphitheater appears just
> below the pyramid. Finally, in the Epcot rendering, the transportation system goes into
> a small portion of the park and actually leaves the park while the railroad in the
> Miniature Worlds painting circles the perimeter of the entire park. While the Epcot
> rendering and Miniature Worlds painting contain similar ideas, both works express
> these ideas dissimilarly.

*Id.* at *21.  Judge Fawsett determined the renderings were *significantly* different in expressing "the

idea of an international theme park . . . due to the difference in scale and size in both pictures.  The

Miniature Worlds painting demonstrates that the idea of an international theme park was to be expressed in a miniature form. "In stark contrast, the buildings in the Epcot rendering are not in miniature form." *Id.* Judge Fawsett's conclusion was also "bolstered by the expert report of Larry Wyatt [who] state[d] that the 'most obvious difference between the Miniature Worlds painting and Epcot rendering are the size of the buildings.'" *Id.* at *21. Further differences Judge Fawsett cited from the report of Worldco's expert, Larry Wyatt[3]:

> In the Miniature Worlds painting, it is difficult to determine which village is the United Kingdom. Wyatt concludes that the foreground right village on the water's edge is probably the United Kingdom because the tower may represent Big Ben, but the rest of the architecture is completely indistinguishable. In contrast, the United Kingdom pavilion in the Epcot rendering does not include Big Ben or other architectural details found in the Miniature Worlds painting. Wyatt states that it is difficult to conclude which Miniature Worlds village represents Canada. . . . Finally, Wyatt had a difficult time discerning the villages representing Japan, the United States, and Italy. . . . Wyatt concludes his expert analysis by stating that "the differences between the Miniature Worlds painting and Epcot are so significant that it is clear that they are completely different projects."

*Id.* at *21 (citations to Wyatt Report omitted). Judge Fawsett's determination that the two renderings were "*remarkably* different at the level of protectable expression" further supports the finding that Plaintiff's copyright claim was objectively unreasonable. Moreover, the idea of an international theme park was not unique in and of itself, given the history of World's Fairs over the prior century, in which Worldco (or related entity) participated in 1964.

The excessively long time between the time Col. Jaffray was alleged to have shown the Painting to Worldco (1962 or 1963) and the ensuing forty years before the copyright was registered or sued upon, for a theme park which had been built and operating for twenty years (since 1982) do not bespeak a well formed claim. Because of these delays, important potential witnesses and evidence

---

[3]Judge Fawsett granted Worldco's *Daubert* Motion striking all or portions of the reports by Plaintiff's experts, Colbert, Rydell, Alexander and Constantino. *Corwin*, 2004 WL 5486639. The Eleventh Circuit affirmed that determination. 475 F.3d 1252.

are necessarily lost or impaired.  Notably, there were the deaths of the key players, Col. Jaffray and

Mark Waters and the turnover/retirement of key Worldco employees with knowledge of any such

meeting or submission in the early 1960's.  Plaintiff knew he would have to overcome nearly

insurmountable problems of proof concerning the "meeting" and whether the Painting was shared.

Plaintiff states: "It was only after being armed with [Professor Colbert's] preliminary expert opinion

did the Plaintiff choose to file this lawsuit, *to flesh out, through discovery, the factual issue of the*

*prior relationship between Col. Jaffray and [Worldco]*."  Doc. No. 342 (emphasis added).  Plaintiff

knew *from the outset*, that he would have to find what was a proverbial "needle in a haystack" – a

document that referred to Worldco's access, through Col. Jaffray, *to the Waters' painting* in *forty*

*years of archived records*.  Moreover, Plaintiff knew that Waters was completely unaware of what

had become of the Painting for the forty years prior to his death, that he had completely lost touch

with Col. Jaffray for forty years, and that Col. Jaffray had since died years prior to the suit. *Corwin*,

2004 WL 5486639 at *1 n.1, *2, *5.  As Plaintiff's (former) counsel sum up the case:  "Time has

passed, witnesses have died, and documents have disappeared."  Doc. No. 347 at 7 n.7.

Plaintiff should have known these would be virtually insurmountable hurdles in pursuing his

claims.  To file suit in spite of these factors was objectively unreasonable.  *See, e.g., Bridgeport*

*Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004) (awarding fees to prevailing

defendant where plaintiffs chose to sue hundreds of defendants all at the same time, regardless of the

strength of the individual claims for contributory infringement and negligence based on shaky facts

and even shakier legal arguments and inevitably swept up parties against whom they had little or no

chance of succeeding and defendants prevailed on a statute of limitations defense); *Williams v.*

*Crichton*, 891 F.Supp. 120, 121-22 (S.D. N.Y. 1994) (copyright infringement claim brought by author

of children's books, based on allegation that books about visits to a dinosaur zoo were infringed by

-18-

the novel and movie "Jurassic Park," was not objectively reasonable, entitling prevailing defendants to award of attorney fees; claim was neither novel nor complex, and all similarities between the works flowed from the concededly uncopyrightable concept of a dinosaur zoo).

In *Amadasun v. Dreamworks, LLC,* the court outlined the factors – similar to those in this case – that it used to find the screenwriter-plaintiff's claims against two large film companies were "objectively unreasonable."  359 F.Supp.2d 1367, 1375-76 (N.D. Ga. 2005).  First, the plaintiff presented no evidence that defendant had access to his work nor that defendant had a reasonable opportunity to view his work; plaintiff had not mailed any of his work, including the five-page outline, to the production company which optioned the script from a different writer.  *Id.* at 1375.  Second, plaintiff failed to prove that either film company had any opportunity to view his works.  *Id.*  Beyond evidence that his screenplays, although unsolicited, were mailed to each corporate defendant, plaintiff presented no evidence that any individual involved with the creative development of the allegedly infringing motion picture had actual access to plaintiff's text. *Id.*  The court summarized: "As is evident, plaintiff repeatedly asserted positions without any evidentiary support, making it impossible for the Court to conclude that plaintiff ever subjectively believed his positions were reasonable.  Thus, given the lack of evidentiary support for plaintiff's claims, the court concludes that plaintiff's legal and factual contentions were not objectively reasonable." *Id.*

Similarly, in this case, Plaintiff maintained his claim despite the dearth of any first-hand witnesses or documentary evidence from *fifty* years of Worldco's archived files.  These factors lead inexorably to the conclusion that Plaintiff's claims were objectively unreasonable.

### 4.  Motivation

Worldco contends that the Jaffrays, whose own lawsuit against Worldco was dismissed on statute of limitations grounds, were the impetus behind Plaintiff filing suit.  Worldco cites to a

-19-

confidential agreement signed the day before the complaint was filed, that provided if Corwin prevailed, the Jaffrays would be entitled to 75% of the recovery.  Doc. No. 337 at 3 (with citation).

Plaintiff's counsel contends that Plaintiff's "primary reason" for filing the lawsuit was "to obtain recognition for Mark Waters' work" and "[i]t was, to a large extent, not motivated by money." Doc. No. 342 at 3. Plaintiff agreed to give a portion of the recovery to the Jaffrays because the idea for Miniature Worlds originated with Col. Jaffray and Plaintiff was being "generous and noble" in sharing the potential recovery.  Doc. No. 342 at 3.

In this case, Plaintiff's expert, Bradley Braun, submitted a report consisting of less than one page of material opinions concluding that Plaintiff was entitled to $3.6 billion (with a "b") in damages.[4]  Even 25% (Plaintiff's portion) of $3.6 billion dollars is an enormous sum.  Given the overall picture of the case, the Court finds it extremely unlikely that Plaintiff was motivated by anything other than a large damages recovery from Worldco, one of the largest multi-national corporations listed on the New York Stock Exchange and one of thirty companies comprising the Dow Jones Industrial Average[5].

## 5.  Need to Advance Considerations of Compensation and Deterrence

In certain cases, it does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim.  *See Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 122 (2d Cir. 2001).  *See also Lotus Dev. Corp. v. Borland Int'l, Inc.,* 140 F.3d 70, 75 (1st Cir. 1998) (in close infringement cases, "the need to encourage meritorious defenses is a factor that a district court may balance against the potentially

---

[4] Although this report is not part of the attorneys fees record, Plaintiff does not dispute the content of Braun's Report in his Response.

[5]*See, e.g.*, http://money.cnn.com/data/dow30/ (describing the "Dow 30 components").

-20-

chilling effect of imposing a large fee award on a plaintiff who . . . may have advanced a reasonable, albeit unsuccessful, claim").

At the same time, courts have recognized that a prevailing defendant's successful defense against a copyright claim aids in establishing the boundaries of infringement and furthers the purpose of "enriching the general public through access to creative works." *Amadasun,* 359 F. Supp.2d at 1376 (citing *Fogerty*, 510 U.S. at 527). "[D]efendants have an interest in being compensated for their successful defense of this action. In addition, potential plaintiffs must be deterred from bringing frivolous and baseless suits."  *Id.*

Some courts have commented on the importance of making sure that prevailing defendants receive their fees because that is the only means they have of recovering their fees. "When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong.  Without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." *Diamond Star Building Corp. v. Freed,* 30 F.3d 503, 506 (4th Cir. 1994).  As the Seventh Circuit explained in *Assessment Technologies of WI, LLC v. WIREdata, Inc.*:

> [W]hen a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party. The best illustration is . . . where the party awarded the fees, being the defendant, could not obtain an award of damages from which to pay his lawyer no matter how costly it was for him to defend against the suit.

361 F.3d 434, 437 (7th Cir. 2004) (cited, but distinguished, by J. Fawsett in *CrossPointe, LLC v. Integrated Computing, Inc.,* Case No. 6:03-cv-1860-Orl-19KRS, 2005 WL 1677460, *5 (M.D. Fla. Jul. 18, 2005).  The Court is also mindful that "the denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the

sort that an award of fees and costs is designed to chill.  Future litigants should be discouraged from comparable behavior." *See Chivalry Film Productions v. NBC Universal, Inc.*, __ F.Supp.2d __, 2007 WL 4190793, *2-3 (S.D. N.Y. 2007) .

A large multi-national corporation such as Worldco and its related entities may be viewed as a "deep pocket" and a target for many baseless or objectively unreasonable suits. Awarding fees in this case will serve as a deterrent for those plaintiffs who submit ideas that are either unsolicited and rejected but bear some resemblance (in their minds at least) to a defendant's ultimately successful idea.  An award of fees in this case will also deter other individuals from sitting on their rights of enforcement for forty years or waiting to enforce their rights until so much time has passed that not a single witness exists with personal knowledge of "access" to the alleged copying.

### 6.  Final Balancing

A plaintiff's good faith or the complexity of the issues is not determinative of the issue of attorney's fees. *See Mitek Holdings*, 198 F.3d at 842.  When the circumstances of the overall case are taken into consideration here, the Court finds that imposing the fees will further the goals of the Copyright Act. *Id*. at 842-43.  The Court concludes that imposing fees on Plaintiff would discourage the filing of baseless suits containing objectively unreasonable claims and encourage meritorious defenses.  Accordingly, it is respectfully **RECOMMENDED** that Worldco recover against Plaintiff its reasonable attorney's fees under the Copyright Act.

### C. RESPONSIBILITY OF THE JAFFRAYS

Worldco contends that, although Corwin did not file suit until November 2002, some two years earlier – "before the Jaffrays had ever heard of the Plaintiff" – the Jaffrays contacted Worldco in 2000 alleging Col. Jaffray's idea of an international theme park and the Miniature Worlds Painting had been copied.  The Jaffrays were represented in 2000 by a group of attorneys, including John

Stemberger, who also subsequently represented Corwin.  Worldco goes on to describe all sorts of conduct by the Jaffrays, including initiating a newspaper article in the TOLEDO BLADE charging that Epcot was copied from the Miniature Worlds Painting and a press conference to announce the claim. Doc. No. 337 at 2-3.  Worldco alleges that, because the Jaffrays' claims were barred by the statute of limitations, they sought out Corwin to serve as a "surrogate plaintiff" to pursue their own expired claims.  Doc. No. 337 at 3.

In November 2002, the same month that his lawsuit was filed, Plaintiff and Patricia Jaffray Jones, acting on behalf of the Jaffray estate, entered into a confidential agreement to share any final judgment obtained in favor of Plaintiff in this action.  *Corwin*, 2004 WL 5486639 at *5.  Plaintiff would receive 25 percent for the Waters estate and Jones would receive 75 percent for the Jaffray estate.  *Id.*  In 2000, the Jaffrays had made allegations identical to those asserted by Plaintiff in this suit, but failed to bring the suit within the limitations period.  *Id.*

Worldco attributes to the Jaffrays the recruitment of Plaintiff Corwin, the sole heir to the Waters estate.  Worldco contends "it is the Jaffrays (who have a direct financial stake in the outcome), and their counsel who actually initiated and controlled this litigation in cooperation with Corwin, the titular plaintiff.  Indeed, Corwin was not even aware of the purported infringement of the Miniature Worlds Painting until he was contacted by the Jaffrays and their attorneys, who provided him with the 2000 [newspaper article] and persuaded him to file suit."  Doc. No. 337 at 4.  "Corwin was clearly a pawn used by the Jaffrays and their counsel as a substitute plaintiff to act in their stead because the Jaffrays' own claims were time barred."  Doc. No. 337 at 5.

However, Worldco fails to cite any *relevant* case law in support of the proposition that the Court can order an unrelated non-party to pay Worldco's attorney's fees under the Copyright Act.[6] The cases cited by Worldco are inapposite to this case because the courts in the other cases allowed substitution of "non-party" officers, directors or successor corporations who were directing the corporation's actions. The Court has found no other precedent that would allow this Court to impose attorney's fees against non-parties who are not directly related to a party to the case.

Worldco cites *Explosive Corporation of America v. Garlam Enterprises*, 817 F.2d 894 (1st Cir. 1987), as standing for the proposition that the Court may find Corwin and the Jaffrays "jointly accountable." Doc. No. 337 at 22. In *Explosive Corporation*, the First Circuit held that the majority-stake parent corporation which had notice of the breach of contract action from inception of the litigation and actually controlled the litigation on behalf of the subcontractor was bound by the judgment against the subcontractor. 817 F.2d at 904. The court applied Federal Rule of Civil Procedure 25, governing transfer of interest, in holding that the successor-in-interest and parent corporation had been directing the litigation for eleven years and should be substituted as defendant. *Id*. at 906. The court looked extensively at *res judicata* cases as applied in corporate settings in which key shareholders and/or officers who controlled the corporation and litigation could be held liable or bound by the corporation's actions because of privity or their role as a key shareholder. *Id*. For this reason, *Alman v. Danin*, cited by Worldco, is also inapposite. 801 F.2d 1 (1st Cir. 1986) (holding two shareholders who were also officers and directors were liable for unpaid contributions to the defunct corporation's employee benefit plan).

---

[6]Worldco's complaints about the Jaffrays' pre-suit machinations with Corwin and otherwise recall the venerable doctrines of barratry, champerty and maintenance. Whatever viability those doctrines might have if applied in a separate action, they cannot supply a basis for seeking a post appeal judgment against non parties.

The third inapposite case cited by Worldco, *Hutto v. Finney*, was brought by prisoners alleging cruel and unusual punishment at the state prisons.  437 U.S. 678, 699 (1978).  The holding in *Hutto* merely stands for the well-settled proposition that a suit for injunctive relief against state prison officers acting in their official capacities is really against the state, and Eleventh Amendment immunity would not bar an award of attorney's fees.  *Id*.  Particularly where the state attorney general had defended the action since it began and had been the one who decided to bring the appeal, the state was required to pay the attorney's fees.  *Id*. at 700 ("Congress recognized that suits brought against individual officers for injunctive relief are for all practical purposes suits against the State itself. . . . [I]n such suits attorney's fee awards should generally be obtained 'either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government'").  The *Hutto* decision has no bearing whatsoever on this case.

The Court has found no precedent for imposing a fee award on non-parties, the Jaffrays.  Accordingly, it is respectfully **RECOMMENDED** that to the extent Worldco seeks fees be awarded against the non-parties, the Jaffrays, the Motion be **DENIED.**

## IV.  § 1927 SANCTIONS AGAINST COUNSEL

Worldco contends additionally that Plaintiff's counsel should be held personally liable for Worldco's attorney's fees pursuant to 28 U.S.C. § 1927, for counsel's unreasonable and vexatious conduct that multiplied the proceedings.  Doc. No. 337 at 17.  First, Worldco argues that Plaintiff's counsel was already aware of how Epcot was "independently created" two years before they filed suit on Plaintiff's behalf.[7]  Second, Worldco contends Plaintiff's burdensome and vexatious discovery

---

[7]This primary and overarching contention raises issues ordinarily presented by a motion under Federal Rule of Civil Procedure 11.  Worldco did not avail itself of Rule 11 with respect to the litigation as a whole.

tactics greatly multiplied the costs of discovery. Third, Plaintiff and his counsel lacked any admissible evidence, Worldco argues, and misled the court in order to maintain an untenable claim.

### A. STANDARD FOR SANCTIONS UNDER 28 U.S.C. § 1927

Title 28 U.S.C. § 1927 reads:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927.  In order to justify an imposition of sanctions under this section, three requirements must be observed: 1) an attorney must engage in "unreasonable and vexatious" conduct; 2) such conduct must "multiply the proceedings;" and 3) the amount of the sanctions cannot exceed the costs incurred due to the conduct. *Jerelds v. City of Orlando,* 194 F. Supp. 2d 1305, 1312 (M.D. Fla. 2002) (citing *McMahan v. Toto,* 256 F. 3d 1120, 1128 (11th Cir. 2001)).  The meaning of "unreasonable and vexatious" is subject to interpretation[8] but "at [a] minimum . . . merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under § 1927; [r]ather, the power to impose sanctions under § 1927 should be exercised 'only in instances of a serious and studied disregard for the orderly processes of justice.'" *Jerelds*, 194 F. Supp. 2d at 1312 (internal citations omitted).  "Black's Law Dictionary defines the term 'vexatious' to mean 'without reasonable or probable cause or excuse; harassing; annoying.'  It further defines 'vexatious suit' to mean a 'lawsuit instituted maliciously and without good cause.'" *Smartt v. First Union National Bank*, 245 F.Supp.2d 1229, 1234-35 (M.D. Fla. 2003).  Section 1927 "does not require a specific finding that counsel acted in, or engaged in, conduct tantamount to, bad faith." *Cordoba v. Dillards, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005).  When counsel "knowingly or recklessly pursues a frivolous claim,"

---

[8]*See Jerelds, supra*, collecting cases.

the district court may order sanctions under § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006). When an attorney has "unreasonably and vexatiously" multiplied the proceedings, the attorney must be required to personally satisfy the fees incurred by such conduct. *Dictiomatic, Inc. v. United States Fidelity & Guaranty Company*, 127 F.Supp.2d 1239, 1247 (S.D. Fla. 1999).

## B. ANALYSIS OF § 1927 CLAIM

### 1. Initiation of the Lawsuit

Worldco contends that in November 2000, Disney "publicly" provided a "detailed and documented history of the independent development" of Epcot to Jaffray's representatives. According to Worldco, this "annotated history of independent creation" was "nearly identical to what was subsequently presented at the summary judgment stage." Doc. No. 337. Worldco argues "[t]here is no doubt, therefore, that well before this case was filed, the Jaffrays and Plaintiff's attorneys were intimately familiar with the extensive and compelling evidence that Disney independently created Epcot," evidence which Plaintiff was "unable to controvert by the close of discovery or in his summary judgment response." Doc. No. 337.

Plaintiff's counsel (separately, but consistently[9]) contend that no fees should be awarded under § 1927 because they had a good faith basis for filing suit, the direction of which was controlled by Plaintiff alone. Counsel points to evidence that the Jaffrays, as fact witnesses, had seen the long lost rejection letter from Worldco which returned Col. Jaffray's materials to him and heard him exclaim

---

[9]Counsel Stemberger, de la O, and Leyton withdrew after Judge Fawsett entered the order granting summary judgment to Worldco. *See* Doc. Nos. 315, 317, 321. These attorneys argued in their Response to the Motion for Attorney's Fees (Doc. No. 347) only against imposition of fees under § 1927. Counsel Silverman and Santucci argue on behalf of Plaintiff and themselves against an award of fees under either the Copyright Act or § 1927. Doc. No. 342. With two significant divergence of interest (besides, obviously the length of representation) as it relates to the "Sklar" note, and that discovery would have been materially less if Worldco had moved to dismiss the UTSA claim earlier, *see* Doc. No. 347 at 12, the Responses make the same arguments as to why § 1927 fees should not be imposed and the Court will discuss them collectively as "Plaintiff's counsel's arguments."

in 1980 upon opening a letter containing a picture of EPCOT that Worldco "must have copied everything, [etc.]." Doc. No. 347 at 8. Plaintiff also points to a press conference Worldco held that controverted, in the public eye, the Jaffray's story that Worldco had communicated with Col. Jaffray. "The Defendant practically accused the Jaffray family of being liars in a public forum." Doc. No. 342 at 4. In the course of discovery, letters surfaced between Worldco and Col. Jaffray which showed at a minimum that some sort of communication had transpired. *Corwin*, 2004 WL 5486639 at *17. However, as Judge Fawsett pointed out, "[t]hese letters merely show that Jaffray and Reddy corresponded with respect to an idea, *but even the idea discussed in the letter is unclear*." *Id*. Thus, at least at the time of the initiation of the suit, it was not "vexatious" or "harassing" or "malicious" for Plaintiff's counsel to file suit or conduct discovery based on the Jaffrays recollections that Col. Jaffray had corresponded or met with someone from Worldco.

As Plaintiff's counsel appropriately points out, and as this Court has previously found, a § 1927 fee award cannot be based on a frivolous complaint:

> The language of § 1927 makes clear that it only applies to unnecessary filings after the law suit has begun and does not apply to initial pleadings. . . . [T]he filing of a frivolous complaint may be sanctioned by Rule 11 or a court's inherent power, but not pursuant to § 1927.

*Velez v. Levy World Limited Partnership,* 6:03-cv-878-Orl22DAB, 2007 WL 842768, *4 (M.D. Fla. March 20, 2007) (internal citations omitted). Moreover, Worldco's vague contention "in November 2000" that Worldco had "publicly" provided a "detailed and documented history of the independent development" of Epcot to "Jaffray's representatives" also does not support an award of fees under § 1927. Plaintiff and/or his counsel cannot be expected to take Worldco's unsworn denials at face value – whether such information is provided in the "public forum" or not. According to Worldco, this "annotated history of independent creation" was "*nearly identical* to what was subsequently presented

at the summary judgment stage."   Again, although Worldco describes the information as "compelling," Plaintiff's counsel was entitled to test and clarify the veracity of Worldco's "independent creation" information through discovery and not just accept it at face value simply because it had first been presented in the "public forum."

## 2. Discovery[10]

Worldco secondarily contends it is entitled to attorneys fees for conduct by Plaintiff's counsel which "needlessly drove up the cost" of the litigation by pursuing a "scorched-earth discovery strategy."[11]   Plaintiff's counsel propounded over 480 separate document requests, according to Worldco, very few of which were confined to the only conceivably relevant time frame, *i.e.,* between 1962 (when the earliest alleged access occurred) and October 1, 1982 (when Epcot opened).  Most of the requests sought production of documents generated between the 1950s and 2004, or a period of more than *fifty* years.  Worldco points to the fact that Plaintiff's counsel only used *five* non-artwork-related documents  – of the *one million pages* produced  – in opposing summary judgment.

Plaintiff's counsel do not deny that they requested an extensive amount of discovery, but contend that Worldco is equally at fault for the vast amounts of discovery, because Worldco could have shaped or limited the discovery via motions practice, for example, by proposing its own more limited time frame or by filing for a protective order.  In fact, Worldco did file a Motion to Limit Discovery, or the timing and sequence of it (Doc. No. 41), which Magistrate Judge Spaulding denied

---

[10]Sanctions or other remedies for discovery abuse are ordinarily to be sought under Rules 26 and 37, Fed.R.Civ.P., rather than 28 U.S.C. § 1927.

[11]Plaintiff's counsel argues that Worldco asked for all of its fees from the inception of the case and it should not be permitted "to go back and redraft [the] motion."  Doc. No. 342 at 14.  In actuality, although Worldco did not parse out the amount incurred in discovery, Worldco most definitively did seek § 1927 fees for Plaintiff's counsel's conduct in discovery and at the close of summary judgment.  *See, e.g.,* Doc. No. 337 at 18 (arguing Plaintiff's counsel lengthened discovery process and should have known before the end of the case evidence was not admissible); 19 (arguing Sklar note presented at summary judgment in misleading manner).

as inefficient use of resources, given Judge Fawsett's prior order concerning the scope of liability for copyright infringement. Doc. No. 49.

Plaintiff's counsel contends that Worldco caused much of this unnecessary hard copy-driven discovery (and hours of review) by refusing to provide Plaintiff with the electronic version of the index. If counsel could have electronically searched through the indexes of hundreds of boxes, so its theory goes, Plaintiff's counsel could have narrowed the hard copy discovery only to those boxes it found to contain relevant key words on the electronic index. While it is clear that the parties could have worked more cooperatively to sort through what appears to be an "electronic discovery" issue, the revised Federal Rules of Civil Procedure governing such discovery were not in place until December 2006; thus, not much guidance existed for the parties' obligations with regard to electronic or database discovery conducted back in 2003 and 2004. *See also* Doc. No. 71 (denying motion to compel in light of *In re Ford Motor Company*, 345 F.3d 1315 (11th Cir. 2003)).

However, it is also clear that Worldco was not blameless in making the discovery process more lengthy. According to Plaintiff, Worldco's Initial Disclosures identified "hundreds upon hundreds" of boxes of potential documents and items; a subsequently-requested index did not narrow the list. Doc. No. 342 at 6. According to Plaintiff's counsel, "Worldco marked virtually every document produced as confidential" and Plaintiff never challenged the confidentiality of any document. Doc. No. 347 at 11. Judge Spaulding on the two occasions was required to rule on discovery issues regarding the method Worldco was using to produce the documents; both times Judge Spaulding agreed with Plaintiff's position. Doc. Nos. 77 ("On the record currently before the Court, therefore, Worldco has not established that its production meets the requirement that documents be produced as kept in the ordinary course of business"); 91 (granting in part Motion to

Compel). Based on the record, the Court finds Plaintiff's counsel's conduct in discovery was not "vexatious" within the meaning of § 1927.

### 3. Lack of Admissible Evidence of Copyright Infringement At Summary Judgment[12]

Worldco contends, despite the voluminous records and testimonial evidence to which Plaintiff had access, including the maximum number of permitted depositions, Plaintiff "never unearthed one shred of admissible evidence that Worldco ever had access to or copied the Miniature Worlds Painting." Doc. No. 337 at 7. Worldco's contention fails on the qualifying phrase "admissible evidence" in its argument. As this Court previously observed in *Velez*:

> [I]t is important that courts not engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Velez*, 2007 WL 842768 at *3 (citing *Cordoba*, 419 F.3d at 1181-82). It is true that Judge Fawsett and the Eleventh Circuit ultimately determined that all of Plaintiff's "access" evidence offered – the Jaffrays' hearsay statements and the Sklar note – was inadmissible for a variety of reasons.

Plaintiff contends that, under his theory of the case, he had a non-frivolous argument that the substantial similarity standard – and not striking similarity – was the standard which should be applied, *even without sufficient evidence of access*. Doc. No. 347 at 9. Worldco does begrudgingly acknowledge that Plaintiff advocated a more favorable test for "access" be applied, a case which used an altogether different test and one more favorable to Plaintiff. Doc. No. 337 at 19. While the

---

[12]As with Worldco's first contention on this subject, this argument, going to the adequacy of the evidence would perhaps have been better asserted under Rule 11.

Eleventh Circuit rejected Plaintiff's approach, the court went to the trouble of explaining why Plaintiff's theory did not apply:

> Corwin also argues that the substantial similarity standard (rather than the striking similarity standard) is the proper standard even without evidence of access. He cites *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000), in support of this proposition. In that case, we did state that "no matter how the copying is proved, the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." Id. at 1214 (emphasis omitted). However, when examined in context, *Leigh* appears here to have used the word "copying" in place of "access." This is further borne out by the fact that the higher "striking similarity" standard, for cases lacking evidence of access, has been employed in Eleventh Circuit cases both before and after *Leigh*. *See Ferguson*, 584 F.2d at 113; *Calhoun*, 298 F.3d at 1232 n. 6.

*Corwin*, 475 F.3d at 1253 n. 11.  Plaintiff's counsel's argument – that the substantial similarity standard and not the striking similarity standard applied – although rejected by the Eleventh Circuit, was not a vexatious litigation of the issue.

Even if Plaintiff's counsel did not know from the suit's inception, Worldco argues, then certainly by the close of discovery, Plaintiff's counsel knew of the overwhelming evidence demonstrating Worldco's independent creation of Epcot.  Doc. No. 337 at 9.  However, once again, the Court points out that the evidence which Judge Fawsett determined (and the Eleventh Circuit affirmed) to be overwhelming evidence of independent creation was from the subsequent Affidavit of Martin Sklar, one of two creative executives responsible for overseeing the design, planning and construction of Epcot.  2004 WL 5486639 at *21 (citing Sklar Aff., Doc. No. 158).  The Sklar Affidavit was attached to Worldco's Motion for Summary Judgment.  Again, Plaintiff lost on summary judgment, but it is not clear that his counsel had "vexatiously" multiplied the proceedings, particularly because the information on which Judge Fawsett relied was presented as part of Worldco's summary judgment motion – which brought an end to the proceedings.

Worldco also contends that Plaintiff's counsel's persistence in asserting Plaintiff's copyright claim was vexatious because counsel, "and surely Messrs. Silverman and Santucci, 'intellectual property experts,'" understood that copyright law protects only perceivable original expression. Doc. No. 337.   At the same time, Worldco does admit, albeit with some disdain, that Plaintiff – "[r]emarkably" – was able to find four experts willing to attest to the substantial and striking similarities between Epcot and Miniature Worlds.  Although all or significant portions of the expert reports were eventually stricken for defects in their methodology, Judge Fawsett specifically found all four experts to be *qualified* in their fields.  *See* 2004 WL 5486639 *6 ("There is no dispute that the experts are qualified to testify competently regarding the matters that the experts intend to address."); *id*. nn. 10, 11, 12, 13 (stating qualifications for each expert).   Plaintiff's counsel's reliance on the opinions of these four experts, even though their methodology was ultimately rejected as flawed, does not constitute "vexatious" conduct in the nature of being "without  reasonable or probable cause, harassing, or instituted maliciously.  *See Smartt v. First Union National Bank*, 245 F.Supp.2d 1229, 1234-35 (M.D. Fla. 2003) ("Black's Law Dictionary defines the term 'vexatious' to mean 'without reasonable or probable cause or excuse; harassing; annoying.'  It further defines 'vexatious suit' to mean a 'lawsuit instituted maliciously and without good cause.'").  Plaintiff's experts' methodology simply did not withstand the scrutiny of Worldco's *Daubert* motion.  Proceeding on the basis of the reports was not "without reasonable cause" or malicious; the reports were merely insufficient to support Plaintiff's claim.

While the Court places the blame entirely on Plaintiff's counsel for Plaintiff's late so-called "supplementation" of his expert reports (*see* 2004 WL 5486639 at *12), because Judge Fawsett alternatively excluded the expert reports (or portions thereof) for their flawed methodology on the merits, the tardiness of the reports will not be considered as an independent basis for § 1927 fees.

### 4.  Braun Damage Report

Worldco contends that Plaintiff's counsel unreasonably and vexatiously extended the litigation by proffering a "preposterously exaggerated" damages claim based on a flawed methodology. According to Worldco, Plaintiff's expert, Bradley Braun, submitted a report consisting of less than one page of material opinions concluding that Plaintiff was entitled to $3.6 billion (with a "b") in damages.  Worldco contends "Braun's report was bereft of any discernible methodology and was based on rough estimates of the percent of Worldco's parent company's revenues attributable to Epcot multiplied by an allocation percentage found in a completely unrelated, sixty year old case having nothing to do with [the] facts." Doc. No. 337 at 10.  The Braun Report is not attached to the Motion for Fees (Doc. No. 337), nor is it part of Worldco's original Motion for Fees. *See* Doc. Nos. 231 & 337 (Original and Renewed Motions for Fees), 233 (Index).  There is no discussion of the report in either Judge Fawsett's or the Eleventh Circuit's opinion and it appears Braun's Report was not considered by either court. It is thus impossible for the Court to evaluate the impact of the document.

### 5.  Lack of Adequate Investigation of FUTSA Claim

As a final point, Worldco contends "Plaintiff's unrelenting pursuit of a frivolous claim under the Florida Uniform Trade Secrets Act until mere days before the motions for summary judgment" warrants a § 1927 fee award.  "Only when Worldco sent a Rule 11 letter in August 2004, did Plaintiff finally, albeit grudgingly, relinquish that claim." Doc. No. 337.  Obviously, Worldco was successful in using Federal Rule of Civil Procedure 11 to persuade Plaintiff's counsel into dismissing the FUTSA claim against it.  Doc. Nos. 148, 149.  A § 1927 fee award cannot be based on a frivolous claim in a complaint.  "The language of § 1927 makes clear that it only applies to unnecessary filings after the law suit has begun and does not apply to initial pleadings." *Velez,* 2007 WL 842768 at *3.  Worldco

has already received the appropriate relief pursuant to Rule 11, for Plaintiff's assertion of FUTSA, *i.e.*, dismissal of the claim when its fallacy was brought to Plaintiff's attention.

### 6. Summary of Findings

Based on the issues raised by Worldco, who has the burden in seeking sanctions against Plaintiff's counsel on a Motion for Fees under § 1927, the Court finds that an award of fees under § 1927 is not warranted.  According, it is respectfully **RECOMMENDED** that, to the extent Worldco seeks fees from Plaintiff's attorneys under § 1927, the Motion be **DENIED**.

## V. AMOUNT OF FEES IN DISTRICT COURT

In finding that an award of fees under the Copyright Act is appropriate here, the Court is mindful that the amount of the fees must be reasonable.  Worldco was represented by two law firms, the Los Angeles office of Sheppard, Mullin, Richter & Hampton LLP and the Orlando office of Baker & Hostetler L.L.P.  The total amount of fees sought for work in the District Court in this case that did not go to trial is approximately $1.7 million.  Doc. No. 334-2.  This, apparently, includes every single minute of time spent by twenty-one lawyers and numerous paralegals in defense, at rates ranging from junior associate time at $130 per hour to senior counsel time at $427 per hour.  In addition, Worldco seeks fees for the appeal for the work of both law firms of $252,007.  Doc. No. 334-2.  This figure is based on time spent by nine lawyers and two paralegals in defense, with Los Angeles senior counsel time billed at $473 per hour.

### A. STANDARDS FOR CALCULATING THE LODESTAR

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988).  This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintaining records to show the

time spent on the different claims; and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

"A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." *Id.* While the District Court may benefit from evidence of prevailing views among practitioners on the reasonableness of such fees, generalized statements that time spent was reasonable or unreasonable are not particularly helpful and are not entitled to much weight. *Norman*, 836 F.3d at 1301. Proof from fee opponents should be precise. *Id*. at 1303.

In formulating a fee that is reasonable, federal courts employ the familiar lodestar approach. *See Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc*., 656 F. Supp. 826 (M.D. Fla. 1987) (awarding fees in copyright case using the lodestar). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include:  1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see Cable/Home Communication Corp. v. Network Production*, 902 F.2d 829, 853 n.37 (11th Cir. 1990).

Although the district court must examine each of the Johnson factors, it is not obligated to adjust a fee upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982). Rather, *Johnson* suggests a balancing process, with the trial judge remaining responsible for the discretionary functions of assessing the weight to be given to each factor and the appropriate adjustments to make in the fee. *Id.*

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). In fact, the going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *see Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148 (2d Cir. 1994) (prevailing community court should use in setting the lodestar is the district in which the court sits).

An applicant may meet this burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman,* 836 F.2d at 1299. The court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303; *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1310 (M.D. Fla. 2003); *Scelta v. Delicatessen Support Services,* 203 F.Supp.2d 1328, 1331 (M.D. Fla. 2002). In exercising its discretion, this Court must consider "the prevailing marketplace rates for the type of work and the experience of the attorneys." *Cabrera v. Jakabovitz,* 24 F.3d 372, 392 (2d Cir. 1994). Services of paralegals and law clerks are also compensable at market rates. *Missouri v. Jenkins*

*by Agyei,* 491 U.S. 274, 288-89 (1989); *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *American Charities,* 278 F.Supp.2d at 1310.

In cases in which the documentation is inadequate, the "district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Norman*, 836 F.2d at 1303. Because the Court is itself an expert on attorney's fees, it may consider its own knowledge and experience and award attorney's fees based solely on affidavits in the record. *Id.* Excessive, redundant, and unnecessary hours should be excluded from a fee award. *Id.* at 1301 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The Supreme Court requires fee applicants to exercise billing judgment which means that the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours that would be "unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.3d at 1301; *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Excluding excessive hours means that a lawyer may not be compensated for activities which would not be billed to a client intent on vindicating its rights. *Id.* Exclusions for excessive hours are ultimately left to the discretion of the District Court. *Id.*

Having set forth these standards, the United States Supreme Court, however, expects that a request for attorney's fees will not result in a second major litigation, and that ideally the litigants will settle the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 434, 437 (1983); *Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003)(Lawyers should not be compensated for turning the litigation about attorney's fees into a "second major litigation."). Justices Brennan, Marshall, Blackmun, and Stevens characterized post-judgment litigation over attorneys fees and related appeals as "one of the least socially productive types of litigation imaginable." *Id.* at 442, 103

S.Ct. 1933 (concurring in part and dissenting in part); *Association for Disabled Americans, Inc. v. Integra Resort Management, Inc.*, 385 F.Supp.2d 1272, 1286 (M.D. Fla. 2005). The Court now turns to the calculation of a reasonable fee.

## B. REASONABLE RATES OF COUNSEL FOR LITIGATION AND APPEAL

In this case, Worldco employed attorneys in two cities, including, from Los Angeles, eight attorneys and six summer associates/paralegals for the litigation and five attorneys and one paralegal for the appeal, at rates clearly exceeding what is reasonable for the Orlando community. The Court finds the rates incurred to be excessive compared to what the Orlando market will bear.

Worldco contends that the hourly rates charged by Worldco's attorneys in this case were in line with the customary fees for the legal markets in which this case was pending and the market where "Disney's archives are located," *i.e.*, Los Angeles, and both law firms have represented Worldco and its affiliates in a variety of matters for many years. Worldco fails to justify the expense of out of state fees merely for representation where its "archives are located." Orlando counsel and paralegals were competent to assist in the production in Los Angeles, and in fact, did travel to Los Angeles. *See* Doc. No. 234, Allen Aff.

The rates claimed for the out of state lawyers may well be reasonable for copyright actions in Los Angeles or other larger cities, but are not in keeping with rates in the relevant community of Orlando. The general rule is that the "relevant market" for purposes of determining the reasonable hourly rate for an attorney's services is "the place where the case is filed." *Barnes*, 168 F.3d at 437; *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims. *Barnes*, 168 F.3d at 437; *Brooks v. Georgia State Board of Elections,* 997 F.2d 857,  869 (11th Cir.

1993) (upholding decision to award non-local rates based on the district court's finding that there were no local attorneys who could have handled the case); *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F.Supp.2d 1301, 1310 n.4 (M.D. Fla. 2003).

James Etscorn, Esq., of the Orlando office of Baker and Hostetler, was lead attorney and was fully competent to handle this case with his Orlando team of attorneys.  In the expert opinion of a well-respected Orlando intellectual property lawyer, Herb Allen, Esq., Mr. Etscorn "enjoys an outstanding reputation in the community for the quality of his trial work."  Doc. No. 234 at 6.  In Mr. Allen's opinion, "only a few attorneys in the Central Florida area could have brought the same legal acumen to bear against the resources of Plaintiff's multiple counsel in cogent and efficient manner that was undertaken by Mr. Etscorn and his team."  Doc. No. 234 at 7.  There is no doubt that Mr. Etscorn and his team were highly competent to defend the claims against Worldco; thus Worldco has failed to show the necessity of hiring out of state counsel or paying out of state rates.  The Court will apply Orlando rates to all counsel's services.

For litigation related work performed in 2003 and 2004, a rate of $300 for senior counsel or partner level work and  $175-225 for associates was the prevailing rate in the Middle District.   The fee applicant's customary billing rate for his hourly fee-paying clients "ordinarily is the best evidence of his market rate." *Lambert v. Fulton Co.,* 151 F.Supp.2d 1364, 1373 (N.D. Ga. 2000), *aff'd,* 253 F.3d 588 (11th Cir. 2001), *cert. denied,* 122 S.Ct. 2361 (2002); *E.E.O.C. v. Enterprise Leasing Co., Inc.,* 2003 WL 21659097, *2 (M.D. Fla. 2003).  Mr. Etscorn,  with 17 years of experience billed his client $279 to $347 per hour[13] during the time the case was litigated.  Doc. No. 233.  Although counsel failed to describe the specific years of experience for his partners and associates, other than to

---

[13]The Court incorporates the 10% discount on counsel's hourly rates that is extended to Worldco.  Doc. Nos. 334-8 at 6; 334-9 at 6.

describe them generally as such, the rates for partners during the period in question were from $270 to $347 and for associates, $135 to $225 per hour.  Doc. No. 23.

While these rates are generally consistent with the rates awarded previously in this district for similarly experienced counsel, they are on the high side for 2003 and 2004 work.  The Court may decide a reasonable rate based on its own expertise and judgment.  *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303-04 (11th Cir. 1988).  In a well-litigated complex *qui tam* case which settled in 2004 after several years of litigation, affidavits were submitted from well-regarded local counsel as expert witnesses opining that a rate of $300 per hour was a reasonable rate for experienced senior counsel in that case.  *See United States of America, ex rel. Albert D. Campbell v. Lockheed Martin Corporation*, Case No. 6:95-cv-549-Orl-28DAB, Doc. No. 559 (Report and Recommendation re: attorney's fees).   In the Middle District case of *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, the court determined a reasonable hourly rate in 2003 for an attorney practicing in the Middle District of Florida with approximately 15 years experience was from $165 to $220, and $90 to $140 for an attorney practicing approximately five years. 278 F. Supp.2d at 1311-12.   Extrapolating from the reasonable rates found in *Lockheed* and *American Charities*, the Court finds that rates of $200 for senior associates and $150 for mid-level associates, and $130 for associates with less than four years of experience to be reasonable.  *See Norman,* 836 F.2d at 1300 (court should interpolate the prevailing market rates for lawyers seeking fees from market rates supplied by parties for lawyers of similar skill levels involved in similar cases); *Lockheed*, slip opinion at 17-18; *American Charities*, 278 F.Supp.2d at 1311-12 (awarding rates of $250-275 for partner-level counsel with fourteen to twenty-three years experience and $190 for other attorney work in a Middle District of Florida case in June 2003); *see also Black College Reunion, Inc. v. HBE Corp.,* Case No. 6:02-cv-04-Orl-28DAB, Doc. No. 70 (Report and Recommendation re:

attorney's fees) (awarding a rate of $240 for senior counsel, $200 for the fifth year associate, and $175 for the third year associate in a matter that did not go to trial or involved any discovery practice, as of April 2003).  Paralegal (or summer associate) rates[14] rarely exceeded $90 an hour in this jurisdiction for work in 2003-2004, and the Court finds that amount to be reasonable.

## C. REASONABLE HOURS IN THS COURT

Baker and Hostetler LLP litigated the case on behalf of Worldco from November 2002 to November 2004.  Doc. No. 233.  Baker and Hostetler (alone) expended in excess of 4,956 hours, of which 2,486 were spent by lawyers and 2,470 by paralegals.  Doc. No. 233.  The total fees incurred and billed by Baker and Hostetler are $884,077.  Doc. No. 233.

The Los Angeles firm of Sheppard Mullin, was initially retained to assist Worldco in connection with its local document production effort (located in Burbank, California), but the firm's role expanded to included "several other aspects of the case, including the motion for summary judgment."  Doc. No. 235.  Sheppard Mullin incurred $836,479 in fees based on a total hours billed of 3,790.  Worldco contends that as part of Sheppard Mullin's duties, voluminous documents had to be reviewed for privilege, marked with Bates numbers for tracking purposes and categorized by request number.  Doc. No. 237.

Worldco contends its attorney's hours are entirely reasonable because the 8,745 total hours of lawyer and paralegal time spent on this case were the direct result of the "prodigious" volumes of discovery propounded by Plaintiff, as well as the numerous motions and hearings involved.  Worldco further contends that, although the claimed damages were terribly inflated, "even exaggerated claims must be taken seriously, particularly in jury cases."  Doc. No. 231.  Worldco concedes that the "the

---

[14]Orlando counsel appropriately counted summer associate work in the paralegal category.  *See*Doc. No. 233 at 3 n.2.

principal issues in the case were not novel," but the litigation still required an intimate knowledge of copyright law and a vigorous defense to Plaintiff's allegations of "stealing" and "misappropriation" when Worldco's reputation was at stake.

Unfortunately, Worldco makes no mention of the exercise of any billing judgment. Worldco is charged with the burden of showing the reasonableness of the hours that were billed and, accordingly, is charged with proving that they exercised billing judgment. *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987). They have failed to do so in this case.

Worldco's submission of billing statements totals 453 pages, 367 pages from Baker and Hostetler (Doc. No. 233) and 86 pages from Sheppard Mullin (Doc. No. 267[15]). Because of the voluminous nature of the bills presented, the Court is not required to review each entry to determine reasonableness. *Loranger v. Stierheim,* 10 F.3d 776, 783 (11th Cir. 1994) (when fee petition and supporting documentation are voluminous, hour by hour analysis unnecessary); *Lang v. Reedy Creek Improvement Dist.*, 1997 WL 809200, *3-4 (M.D. Fla. 1997). Rather, the Court has reviewed the Affidavits, exhibits and testimony and has carefully considered the evidence in light of the principles set forth in *Hensley* and its progeny. The following analysis notes specific and general issues and grounds for adjustment of the hours requested in Worldco's papers.

As illustrated in the discussion of § 1927, *supra,* the record certainly shows that Plaintiff, for his part, conducted the litigation in a far reaching and aggressive manner. This approach makes Plaintiff's objections to the size of the fee request ring a little hollow. That said, it is also readily apparent that not all of the difficulties and disputes during the litigation are chargeable to Plaintiff.

---

[15]A number of the billing statement pages were filed vertically rather than horizontally, complicating the ability to read through them. Doc. No. 267.

Worldco, in some degree contributed to the time and expense associated with document production and motion practice.

Like any litigant, Worldco is free within its means to employ whichever and how many attorneys it wishes and to give them free rein in devoting resources in defending an action.  When seeking to shift the cost of such a defense to a losing adversary, however, those choices are subject to scrutiny, and the fee to be shifted may be more limited than the amount reasonably billed to and accepted by a client.

Counsel for Worldco have done a reasonably good job of describing the specific tasks performed and the general scope of the litigation.  Missing from the papers is any persuasive demonstration of overall billing judgment.  Nor is there an adequate discussion of the big picture to explain why so large a total fee can be justified in a case decided on summary judgment.  Likewise, while there is some justification for involving more than one law firm, the use of so many different billing timekeepers is unsupported.  The Court is left with a strong and unrefuted sense that the time and cost claimed is simply too large.  Plaintiff's arguments (devoted as they are primarily to questions of allowance of fees) are not particularly helpful in ultimately assessing a reasonable fee.

Given this state of affairs and noting that no party has requested an evidentiary hearing, the Court makes its own adjustments to reach a reasonable figure based on the record as a whole.

The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment.  *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (reducing the award 13% where the billing records were completely devoid of any hours written off and were incomplete); *Walker v. U.S. Dept. of Housing and Urban Development,* 99 F.3d 761, 770 (5th Cir. 1996) (awarding 15% as the appropriate reduction for lack of billing judgment);  *United States of America, ex rel. Albert D. Campbell v. Lockheed*

-44-

*Martin Corporation*, Case No. 6:95-cv-549-Orl-28DAB, Doc. No. 559 (Report and Recommendation re: attorney's fees; reducing fees by 15% for overstaffing).

After a thorough review of Worldco's counsel's fees in light of redundancies and duplication, the Court finds that counsel's submitted hours are, to a degree, excessive given the nature and circumstances of the case, and should be reduced by 20%. *See Norman*, 836 F.2d at 1301 (district court must use its discretion to exclude excessive or unnecessary work on given tasks).

The Court also finds that it was not reasonable for the most senior attorneys (Katz and Etscorn) to bill at their most expensive rates for tasks that should have been assigned to less-senior (and less-expensive) attorneys at their disposal. Typically, in cases of any size and complexity, professional staffing is done with an eye toward efficiency, with work performed by the professional with the appropriate level of training and experience. Routine tasks are not more valuable simply because they are performed by a senior attorney. The staffing chosen by Worldco's counsel in this case is decidedly top heavy. There are many instances of senior counsel seeking premium rates for mundane aspects of the case that could, and should, have been handled by less costly, junior attorneys. A reduction in rate to $200 for 20% of the hours of these most-senior attorneys is appropriate.

Taking all of the various issues set forth above into account, the Court finds the following to be an appropriate award to Worldco for attorneys' fees in the District Court.

| ATTORNEY/ PARALEGAL | YRS. IN PRACTICE (2004) | RATES SOUGHT | RATES AWARDED | HOURS SOUGHT | UNREDUCED TOTALS |
|---|---|---|---|---|---|
| Martin D. Katz[16]     80% of hours     20% of hours | 23 | $ 427 | 300 200 | 170.1 42.5 | $ 51,030 8,500 |
| Gilbert L. Henry | 5 | 279 | 200 | 1008.7 | 201,740 |
| Demery Swaigler | 4 | 261 | 200 | 60.0 | 12,000 |
| Melanie I. Breen | 4 | 261 | 200 | 985.9 | 197,180 |
| Norma Garcia | 3 | 234 | 150 | 69.9 | 10,485 |
| Jeremiah Reynolds | 3 | 234 | 150 | 37.7 | 5,655 |
| Kelly L. Pope | 1 | 216 | 130 | 136.3 | 17,719 |
| Helen H. Kang | 1 | 216 | 130 | 46.3 | 6,019 |
| Paralegals/Summer Assoc.[17] | N/A | 99-175 | 90 | 1232.3 | 110,907 |
| James Etscorn[18]     80% of hours     20% of hours | 17 | 279-324 | 300 200 | 1242.2 310.5 | 372,660 62,100 |
| Deborah Wilcox | Ptr. | 279-347 | 300 | 100.4 | 30,120 |
| Robert Thielhelm | Ptr. | 270 | 260 | 1.8 | 468 |
| Edgar E. Stanton | Assoc. | 131-162 | 150 | 607.5 | 91,125 |
| Timothy Lemper | Assoc. | 135-162 | 150 | 132.2 | 19,830 |
| Rafael Ribeiro | Assoc. | 90-139 | 120 | 52.8 | 6,336 |
| Jodi Murphy | Assoc. | 139 | 130 | 15.4 | 2,002 |
| Josette Grippo | Assoc. | 225 | 150 | 9.3 | 1,395 |
| Aaron Rupert | Assoc. | 130 | 130 | 7.3 | 949 |
| John Frost | Assoc. | 135 | 130 | 3.3 | 429 |

[16]Katz Affidavit.  Doc. No. 237.  Applying the reduced rate to 20% of  Mr. Katz's 212.6 hours results in 42.5 hours billed at $200 per hour for associate-level work and 170.1 hours billed at market rate of $300 per hour for senior partner level work.

[17]Summer Associates: Valerie E. Alter, Glenn Nieves; Legal Assistants: William Z. Gutman, Amanda C. Marcus, Gail H. Reinig, Diana L. Riglet.  Doc. No. 237.

[18]Etscorn Affidavit.  Doc. No. 233.  Applying the reduced rate to 20% of  Mr. Etscorn's 1552.7 hours results in 310.5 hours billed at $200 per hour for associate-level work and 1242.2 hours billed at market rate of $300 per hour for senior partner level work.

| ATTORNEY/ PARALEGAL | YRS. IN PRACTICE (2004) | RATES SOUGHT | RATES AWARDED | HOURS SOUGHT | UNREDUCED TOTALS |
|---|---|---|---|---|---|
| Kenneth Oh | Assoc. | 225 | 150 | 2.2 | 330 |
| Elizabeth Hendershot | Assoc. | 225 | 150 | 1.3 | 195 |
| Theresa Dawson | Paralegal | 90 | 90 | 1839.7 | 165,573 |
| Other Paralegal/Sum. Assoc | Paralegal | 90 | 90 | 508.4 | 45,756 |
| Ricky Dyer | Media Spc. | 99-108 | 0 | 121.8 | 0 |
| **TOTAL** | | | | 8,745 | $1,420,503 |

When the total of $1,420,503 (calculated at the revised hourly rates) is reduced by 20%, the final total is **$1,136,402.**

# VI. APPELLATE FEES

Plaintiff's Notice of Appeal was filed in December 2004, and the Eleventh Circuit decided the appeal on November 2, 2006. The Eleventh Circuit also determined that Worldco was entitled to an award of reasonable appellate attorney's fees pursuant to 17 U.S.C. § 505. Doc. No. 331. The issue of the reasonable amount of fees was transferred to the district court for consideration and disposition. Doc. No. 331. Plaintiff's opposition argues generally that the amount that Worldco claims is two times the amount spent by Plaintiff on appellate fees, but the opposition is not specific about any particular entries being unreasonable. Doc. No. 334-10 at 12. Plaintiff contends Worldco's time is overstated because it exceeds the amount Worldco predicted in support of the bond for the appeal and exceeds Plaintiff's estimate of time spent by his own counsel. Doc. No. 334-10 at 28-29. Worldco responds that the time required was high in part because of the "sheer number of legal issues" argued by Plaintiff and Plantiff's inclusions of authorities not cited below. *See* Doc. No. 334-11 at 10.

Having reviewed the record, the Court is frankly astounded at the size of the fees sought.  The number of timekeepers involved and the amount of time devoted to defending the judgment are unwarranted.  This case was decided on summary judgment.  The appeal was necessarily limited to the summary judgment record and the legal issues raised in the District Court proceedings.  While some new authorities may have been cited on appeal, the great bulk of required legal research should already have been completed

No justification is given for four timekeepers devoting substantial time to preparing for oral argument with three high priced attorneys[19] actually attending the oral argument.  This is not a case tried by a courtroom specialist, justifying an appellate practitioner reviewing an extended record for the purpose of fashioning effective arguments on appeal.  Rather, it is a case decided on legal issues that were extensively briefed in the District Court.  The legal issues addressed by the Court of Appeals were largely the same as those decided below.  Worldco's own estimate of likely charges for the appeal is dwarfed by the charges actually claimed, and Worldco's explanation of the discrepancy is insubstantial.

Because of the nature of work involved in preparing an appellate brief and delivering oral argument, it is not possible to pinpoint which time entries were redundant or unnecessary.  Instead, it is appropriate simply to reduce the fee claim to the maximum that the Court can find generally reasonable for an appeal of this kind and complexity.

As noted above, when seeking the posting of an appellate bond, Worldco's counsel estimated appellate fees and costs in the range of $120,000 to $150,000.  Though these estimates seem high,

---

[19]Attorneys who have spent substantial time working on a case have an understandable desire to see the appellate process play out by witnessing oral argument.  However natural this impulse may be, the circumstance of oral arguments on appeal severely limits any contribution by counsel other the one making the argument.  Absent justification not shown here, it is not appropriate to visit the cost of multiple attendees on one's adversary.

-48-

they were accepted by this Court in setting a bond amount (Doc. No. 306 and 314). Had Plaintiff suspected he might be facing a fee claim double that estimate, it is as least theoretically possible he would have had second thoughts about pursuing the appeal. Worldco has not justified an award so in excess of its pre-appeal estimate. These considerations point to an appropriate allowable maximum fee.

Taking all these considerations into account, the Court recommends **$125,000.00** as an appropriate award to Worldco for attorney's fees incurred on appeal.

## VII. CONCLUSION

It is respectfully **RECOMMENDED** that Worldco be awarded attorney's fees against plaintiff only for the district court litigation of **$1,136,402**. This award should be augmented by allowing interest (at the then prevailing federal judgment rate of 2.60%) from the time Worldco originally filed its Motion for Attorney's Fees (December 6, 2004–Doc. No. 231).[20]

It is further respectfully **RECOMMENDED** that Worldco be awarded attorney's fees for the appeal of **$125,000.00**. This award should be augmented by allowing interest (at the then prevailing federal judgment rate of 4.98%) from the time the Eleventh Circuit awarded Worldco its Attorney's Fees (June 8, 2007 – Doc. No. 331).[21]

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 15, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[20]This results in a per diem of $80.95

[21]This results in a per diem of $17.05.

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy